In the Matter of the Estate of SUSAN M. WATSON, Deceased.

Surrogate's Court, New York County, May 29, 1941.

*McIntyre & Van Steenbergh*, for the City Bank Farmers Trust Company and others, as executors, etc., petitioners.

*Martin Taylor*, for The New York Post Graduate Medical School and Hospital, respondent.

*Harison & Hewitt* [*William Harison* and *William Imhof* of counsel], for The General Theological Seminary of the Protestant Episcopal Church in the United States, respondent.

*Candler & Mills* [*Marsden B. Candler* of counsel], for Eugene Augustus Hoffman Watson, respondent.

*Jackson, Fuller, Nash & Brophy*, for the St. Luke's Home for Aged Women, respondent.

*Charles G. Coster*, for Arthur F. Sargent, respondent.

*Kathryn A. Wendel*, special guardian.

DELEHANTY, S.   Deceased died on March 31, 1937.   She left her surviving two sons and a daughter.   She appointed these three children and a corporate fiduciary as executors of her will.   Her daughter died on October 26, 1938.   The surviving executors and the executor of the deceased daughter's will have filed an accounting in which among others a question is raised concerning gifts in the will to charity.   Deceased's last will was executed on March 11, 1937.   In it she bequeathed specific articles of jewelry and other personal property to her children.   She provided general legacies of $50,500, of which $31,500 went to charitable legatees. She gave annuities to various persons with directions for the

purchase thereof by her executors or the setting aside of an amount sufficient to produce the annuity. After the death of the annuitants the amount so set aside is to become part of the residuary estate. Paragraphs sixth and seventh of the will are as follows:

"*Sixth*. All the rest, residue and remainder of my property, I give, devise and bequeath in equal shares to The New York Post Graduate Medical School and Hospital to add the income of its share to the Max G. Schlapp Memorial Fund for research into the causes of mental deficiency and for the relief of mental defectives, and to the Protestant Episcopal General Theological Seminary, New York, N. Y., to be added to its general endowment funds.

"*Seventh*. If for any reason any portion of my estate has not been effectually disposed of by this Will, I give, devise and bequeath said portion of my estate to my children, Henry Lee Watson, Mary Elmendorf Ray and Eugene Augustus Hoffman Watson, or such of them as shall survive me, in equal parts, or all to one if only one should survive, the issue of any of my three children who shall predecease me, leaving issue me surviving, not to take under this clause of my Will. Without imposing any obligation, legal or equitable on my children not heretofore assumed by them, it is my hope that any property so received by any of my children under this clause, will be used to carry out my wishes as hereinbefore set forth."

Eugene A. H. Watson, one of the sons, contests the validity of the gifts to charity as being in excess of fifty per cent of the gross estate less debts and as being prohibited by the provisions of section 17 of Decedent Estate Law. Prior to her death the daughter assigned to Eugene A. H. Watson her interest up to $2,500 of any funds to which she might be entitled by reason of the operation of the statute. The other son made a like assignment. It is conceded that the aggregate of the gifts to charity exceeds fifty per cent of the gross estate less debts. The two charitable residuary legatees object to the invocation of the provisions of the statute by Eugene A. H. Watson or by the other son or by the executor of the will of the deceased daughter on the ground that all three children of deceased are estopped from invoking the statute or have waived any rights which they might have thereunder because of certain instruments signed by them during deceased's lifetime. The charities urge further that if it be found that no estoppel or waiver exists the two sons and the executor of the deceased daughter are required under the provisions of paragraph seventh of the will to deliver to the two residuary legatees any property received by them through operation of the statute.

Assuming the proof to be competent, the facts upon which the claim of waiver or estoppel is based are as follows:

Deceased executed a will on November 3, 1928, in which she made several general bequests to charity. By paragraph twelfth of that will she bequeathed her residuary personal estate in equal shares to St. Luke's Home for Aged Women and to the Protestant Episcopal General Theological Seminary. By paragraph fourteenth of said will she provided:

"*Fourteenth.* If for any reason any portion of my estate has not been effectually disposed of by this Will, I give, devise and bequeath said portion of my estate to my children, Henry Lee Watson, Mary Elmendorf Ray and Eugene Augustus Hoffman Watson, or such of them as shall survive me, in equal parts, or all to one if only one should survive, the issue of any of my three children who shall predecease me, leaving issue me surviving, not to take under this clause of my Will. Without imposing any obligation, legal or equitable on my children, it is my hope that any property so received by any of my children under this clause, will be used to carry out my wishes as hereinbefore set forth."

At the request of deceased each of her three children signed an instrument which is dated New York, November —, 1928, the text of which is as follows:

" DEAR MOTHER, .

" If any portion of your estate not effectually disposed of by your Will passes to us under the provisions thereof, we assure you that it will be turned over by us and given one-half to St. Luke's Home for Aged Women, and one-half to the Protestant Episcopal General Theological Seminary at Ninth Avenue and 20th Street; N. Y. C., as an additional contribution to the respective endowment funds of said institutions, on the same terms as the gift of your residuary personal estate is made to such institutions by your Will.

" Affectionately."

Deceased executed another will on December 11, 1930, which revoked the 1928 will. In it were some changes in the disposition of the specific personal property and in the general legacies. The general charitable gifts were substantially the same in amount. The residuary was given to the two charitable residuary legatees named in the 1928 will. The 1930 will contained a provision identical in text with the provisions of paragraph fourteenth of the 1928 will. Deceased executed still another will on April 23, 1931. Disposition of her property by this will was the same as that provided for in the 1930 will except in a few minor instances which

are here immaterial. The residuary clause in this will and the provisions respecting any property not effectually disposed of were identical in text with those of the 1928 and 1930 wills.

Deceased executed yet another will on January 7, 1932. This will eliminated two annuitants named in the 1931 will who had died, gave an additional general legacy, made a few other minor changes and bequeathed the residuary estate in equal shares to the New York Post Graduate Medical School and Hospital and to the Protestant Episcopal General Theological Seminary. The provisions respecting property not effectually disposed of under the will were identical with the provisions respecting such property in all of the prior wills.

In a letter dated July 1, 1932, deceased wrote to her son Eugene A. H. Watson this: "I find that St. Luke's Home is receiving a number of legacies so I have decided to make the changes in my will and will ask you to sign another paper stating that what is left of my personal money may be divided between the Seminary and the Schlapp Clinic. I hope you will do this for me. After all the bequests are made there will be precious little any way."

Thereafter the three children under date August 31, 1932, signed instruments identical in text as follows:

" DEAR MOTHER:

" If any portion of your estate not effectually disposed of by your will passes to me under the provisions thereof, I assure you that it will be turned over by me and given one-half to the New York Post Graduate Medical School and Hospital to add the income of its share to the Max G. Schlapp Memorial Fund for research into the causes of mental deficiency and for the relief of mental defectives, and one-half to the Protestant Episcopal General Theological Seminary, now located at Ninth Avenue and 20th Street, New York City, to be added to its general endowment funds, on the same terms as the gift of your residuary personal estate is made to such institutions by your will.

" Affectionately."

Deceased executed still another will on March 19, 1934. Her residuary is disposed of by this will as was her residuary by the 1932 will. There is a slight change in the provisions respecting property not effectually disposed of. After giving such property to the three children in the same language as in the prior wills the text continues: " Without imposing any obligation, legal or equitable, on my children *not heretofore assumed by them*, it is my hope that any property so received by any of my children under this clause, will be used to carry out my wishes as hereinbefore set forth." (The change is indicated by the italics.)

The 1934 will was delivered to the corporate executor in a sealed envelope in which were also contained the three instruments dated August 31, 1932, signed by the three children of deceased. It is conceded by the two sons of deceased that they signed the instruments of November, 1928, and of August 31, 1932, but each asserted lack of recollection of any of the circumstances attending their execution.

The seminary contends that the children of deceased are estopped from invoking the provisions of the statute because of the delivery by them of the letters of August 31, 1932. As indicated in the objections it also contends that if they did not waive their rights to invoke the statute the property received by them under the will is charged with a secret trust for the benefit of the residuary legatees. The other charitable legatee makes the same contentions. The son of deceased who invokes the statute asserts that the letters of August 31, 1932, are insufficient to establish a waiver or an estoppel or to impose a trust upon any property received pursuant to the statute. He argues that there was no waiver because it has not been established that the children had knowledge of their rights under the statute or knowledge that they were waiving these rights. He urges also that the alleged agreement or release is based on an inadequate consideration. Finally he urges that the instruments of August 31, 1932, apply only to the will of July 7, 1932, and not to any later will nor to the will admitted to probate.

Before discussing the doctrines of waiver or estoppel upon which the charities rely, it is necessary to consider the true meaning of the will of deceased and to arrive at a true understanding of the purpose which she sought to accomplish. The doctrines of waiver and estoppel relate to legal relationships and the court must determine what, if any, legal relationship the deceased and her children intended to assume before determining the application of either doctrine. Clause seventh of the will quoted hereinabove and the letters prepared by the draftsman of the will do not support the argument that deceased attempted to bar resort by her children to the provisions of section 17 of Decedent Estate Law. Deceased's will did effectually dispose of all her property and if left undisturbed by the persons entitled to invoke the limit on charitable gifts there would be no operative effect of paragraph seventh of the will. It is clear that deceased fully understood this fact and that the reason for the insertion of paragraph seventh in the will was that deceased recognized that her children could of right invoke section 17 of Decedent Estate Law. The letters of August 31, 1932, impliedly contemplate the exercise by deceased's children·

of their rights under the cited section. The letters in their text purport to deal with property actually received by reason of such invocation. The will and the letters together outline a program of deceased whereby she (a) knowingly made a gift to charity in excess of the statutory limit, (b) contemplated the invocation of the statute by her children and the consequent vesting in them of some of her property, and (c) exacted from her children promises to pay to the beneficiaries under the will whatever money was withheld from such beneficiaries because of the invocation of the statute. This is a most roundabout scheme of testamentary disposition. But it appears to have been adopted deliberately by the draftsman and the deceased as a means of effecting a charitable gift which, if made by will alone, could be defeated by an invocation of the statute.

The draftsman and the deceased did not attempt to defeat the operation of the statute so far as such operation would vest property of deceased in her children. They assumed that the invocation of the statute would be operative and their plans proceeded from the point of receipt of the property by the children. As of the time of that receipt the plan of the will and the letters was to impose a trust obligation upon the children. Such is plainly the scheme of the will and the letters. Consideration of the legal validity of this idea is essential.

In the leading case of *Amherst College* v. *Ritch* (151 N. Y. 282) it was held that the statute (Dec. Est. Law, § 17) is not the equivalent of a mortmain statute. It does not represent an overmastering State policy which courts must enforce in all circumstances and under all conditions. An effective surrender of rights or of property procurable by invocation of the statute is permitted. None but a limited class may invoke it and any member of that class may surrender rights vested in him under the statute. No State policy forbids.

The cited case, however, establishes the futility of an attempted evasion of the statute by the device of a testator entering into an agreement with a prospective legatee that he would devote his legacy to the charitable purposes desired by the testator. The attempt of the testator there to impose upon his legatees a trust obligation to pay over what they received to the charities was held to be an integral part of the testamentary scheme and so subject to the same limitations on the disposal of property as outright provisions in the will in favor of the charities would have been. Finally, the cited case holds that the recipient of a legacy designed not for his benefit but for the benefit of charities takes the fund in trust; and in trust for the benefit of the charities only

in the degree to which 'they would benefit if section 17 of Decedent Estate Law were invoked; and further in trust for the distributees of the testator or his alternative legatees in respect of the balance invalidly disposed of because of any excess over the limit established by the statute. In the cited case the trust held to have resulted in favor of the distributees of the testator was not enforced in favor of such distributees; but only because they executed instruments releasing their claims to the testator's property after their rights had accrued. These releases were held to bar their claims.

In the cited case the legatees who were charged with the trust obligation to pay over the legacy intended by the testator for charitable purposes were strangers to the blood of the testator. Here the plan of deceased was designed to impress a trust upon the property in the hands of the very persons who are the only persons entitled in this estate to invoke the statute limiting charitable gifts. Nothing can turn upon the fact that the legatee is in the one instance a stranger to the blood and in the other a member of the class favored by the statute. It would emasculate the statute if it could be avoided by the simple device of making a gift to one entitled to invoke it and then charging the gift with a trust obligation to devote it to charity.

The real question then on this record is whether deceased, through the device of the letters procured from her children while she lived, could impose a trust upon property receivable by her children by reason of their invocation of the statute. The transaction between deceased and her children did not create a trust. Deceased procured the letters in the hope that the charities would benefit to the extent of her whole residuary but in procuring them deceased was not entering into any contract relation with her children and they in turn were not intending to assume any legal relationship toward any property of their mother. Neither of the parties was dealing on a contract basis. None of them had any thought of the factors normally entering into contract relationships. The idea of consideration passing from either party to the other was not present in the minds of any of them. Deceased asked her children to make her a pledge as to what they would do if they possessed themselves of some of her money by invoking the statute. They wrote the letters of August 31, 1932, in answer to her requests. At that time her children had nothing but an expectancy. They had no property right in deceased's assets. Whatever inchoate right they possessed ripened into a property right only upon deceased's death. It was only then that they acquired an interest in her estate which entitled them to invoke section 17 of Decedent Estate Law. When any member of the

permitted class invoked that section, the children under the alternative legacy in clause seventh of the will became vested with the excess attempted to be given to charity — such excess to be ascertained on an accounting. It is at that point, if at all, that waiver or estoppel could be urged.

Waiver has been defined as an intentional relinquishment of a known right. (*Clark* v. *West*, 193 N. Y. 349; *Davison* v. *Klaess*, 280 id. 252; *S. & E. Motor Hire Corp.* v. *N. Y. Indemnity Co.*, 255 id. 69.) In the last case cited the court said (at p. 72): " This court has frequently pointed out that waiver is an intentional relinquishment of a right and ordinarily must be predicated upon full knowledge of all the facts upon which the existence of the right depends." The intention to waive must clearly appear. (*Davison* v. *Klaess, supra; Alsens A. P. C. Works* v. *Degnon Contracting Co.*, 222 N. Y. 34.) It depends not on contract or estoppel but on the intention of the party against whom it is asserted. (*Hotchkiss* v. *City of Binghamton*, 211 N. Y. 279.) " In order to constitute a waiver, the right, benefit, or advantage in question must be in existence at the time, although it may be unenforceable. Waiver involves the voluntary relinquishment of some known right which is at the time available; thus, one cannot waive that which is not his as of right at the time of waiver; a person cannot waive a right before he is in a position to assert it. There can be no waiver of a nonexistent or lost right." (67 C. J. 299.) " Waiver is ' voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed.' " (67 C. J. 289; cited with approval in *Davison* v. *Klaess, supra.*)

At the time of the execution of the instrument dated August 31, 1932, the children of deceased were not vested with an existing legal right to any part of deceased's assets by reason of the possible operation thereafter of section 17 of Decedent Estate Law. It could not be determined at that time whether any right would ever accrue to them under the statute. So far as her children were concerned there was a right of deceased to disinherit them and of course the possibility that none of them would survive deceased. Under the authorities cited, the court holds that no effective waiver of their rights under the statute was made by deceased's children.

While the doctrines of waiver and estoppel are sometimes jointly operative, the principles applying to them rest on differing bases. Estoppel is defined as the act or declaration of a person made to another which so affects the conduct of the latter to his injury as to make it unjust to permit the declarant to claim that the declaration was not true. (*Continental National Bank* v. *National*

*Bank of the Commonwealth,* 50 N Y. 575; *Rothschild* v. *Title Guarantee & Trust Co.,* 204 id. 458.) " The doctrine of estoppel by representation is ordinarily applicable only to representations as to facts either past or present, and not to promises concerning the future which, if binding at all, must be binding as contracts." (21 C. J. 1142.) The instruments signed by the children of deceased are representations only as to future action. " An estoppel from the representations of a party can seldom arise, except where the representation relates to a matter of fact, to a present or past state of things. If the representation relate to something to be afterwards brought into existence, it will amount only to a declaration of intention or of opinion, liable to modification or abandonment upon a change of circumstances of which neither party can have any certain knowledge." (2 Herman on Estoppel and Res Adjudicata, § 778.) " Representation or concealment must, * * * in all ordinary cases, have reference to a present or past state of things; for if a party make a representation concerning something in the future, it must generally. be either a mere statement of intention or opinion, uncertain to the knowledge of both parties, or it will come to a contract, with the peculiar consequences of a contract, or to a waiver of some term of a contract or the performance of some other kind of duty." (Bigelow on Estoppel [6th ed.], p. 636.) The New York cases support the rule that estoppel can arise only in respect of a representation concerning an existing or past state of facts. (*Hollins* v. *Hubbard,* 91 Hun, 375; 165 N Y. 534; *Sewer Commissioners* v. *Sullivan,* 11 App. Div. 472; affd., on opinion below, 162 N. Y. 594; *White* v. *Ashton,* 51 id. 280; *Shapley* v. *Abbott,* 42 id. 443; *Pratt* v. *Ano,* 7 App. Div. 494; *Quincy & Co. Arbitrage Corp.* v. *Cities Service Co.,* 156 Misc. 83.) This also appears to be the rule in the Federal courts. (*Jelliffe* v. *Thaw,* 67 F. [2d] 880.) Under these authorities it must be held that no estoppel has been shown.

A ruling is required on a motion to strike out the letters of August, 1932. This motion is made on various grounds none of which requires discussion except the argument that the letters were intended to apply only to the will of deceased dated July 7, 1932. The motion to strike is denied. The court holds that the letters were intended by deceased and her children to apply to any testamentary instrument of hers which in general followed the plan of disposition outlined in the will of July, 1932, and in the letters. It was within the contemplation of the parties that deceased was not limited in changes of her will so long as she adhered to the general plan stated by her to her children. But whether the children of deceased will observe her wishes is a matter which

lies outside the field of enforcement by decree. While the court conceives that it has the power (*Matter of Raymond* v. *Davis*, 248 N. Y. 67) to enforce any legal obligation of a legatee to turn over to others a benefit received by him, it finds no such obligation here enforcible against the children of deceased.

One of the charities contends that in any event the assignments to Eugene Watson by Mrs. Ray and by Henry Lee Watson can be given no effect. Its brief argues that the right to invoke the statute is a personal one and that none but Eugene Watson can benefit by his invocation of the statute. This court has held to the contrary. In *Matter of Apple* (141 Misc. 380, 383) the court said: " If any one within the favored class objects, the distribution of the intestate property, of course, will be shared in by all the distributees whether specifically mentioned in section 17, or not. This is for the reason that the excess is to be treated like all other intestate property and distributable accordingly." This ruling is justified by the terms of the statute. The statute says that the gift to charity " shall be valid to the extent of one-half, and no more." It then provides that the validity of a bequest to charity may be contested by " a surviving husband, wife, child, descendant or parent." Thus the statutory scheme expressly limits the gift to one-half part of the estate after the payment of debts whenever the statute is invoked by any one within the permitted class. The statute does not make an alternative gift to the one invoking the statute. When invoked by any one entitled to do so it puts a limit upon the charitable gift. That done, the will must be looked at to ·see the consequence of the limitation. If the will contains an alternative method of disposing of the excess, the will of course will operate thereon. If no such provision is in the will, then the property passes in intestacy as was directed in *Matter of Apple* (*supra*). There being no effective legal bar to the operation of the statute, its invocation by one of the permitted class requires the payment to the children of deceased under clause seventh of her will of the excess over the statutory limit of the gifts to charity. Such excess is now ascertainable and the decree may provide for the distribution of it, taking into account the assignments which have been made by certain of the children.

The objections of General Theological Seminary challenge the payment from principal of certain annuities. The tenor of the will authorized the executors either to purchase an annuity (this was not done) or to invest and keep invested enough of the capital of the estate to produce income sufficient to pay the annuities. All of the annuity payments should have been made from

income and the decree will so provide. This objectant also questions the plan outlined in subdivision (2) of Schedule L of the account in relation to a so-called Walker agreement. The alternative method of adjusting this matter which is set forth in the second objection of this objectant is approved by the court and is to be provided for in the decree. Objections first and second of this objectant are sustained. Objections third and fourth are overruled. Similarly the objections of New York Post Graduate Medical School and Hospital are overruled so far as the second and third are concerned and sustained so far as the first is concerned. Objection first of Eugene Watson is overruled and objection second is sustained. Objections were filed by a physician whose claim was adjusted at $300. That amount has since been paid. In consequence no ruling is needed on his objections.

The executors seek instructions respecting cash which was found in an envelope in the safe deposit box of deceased. On the outside of this envelope was written " For Dr. Frederick Burgess." Inside the envelope was the cash sum of $2,000 and a letter addressed to Dr. Burgess under date December 17, 1933, in this text:

<em>" December</em> 17, 1933.

" My very dear friend,

" The enclosed is something that I have been laying aside so that nothing would interfere with my great desire that you shall not suffer by the loss of income and which I promised you that you should have it this coming year.

" If anything happens to me I want you to keep the contents and tell no one about them, but use it all for your *personal* comfort. Please do this and think kindly of me. You will never know the depth of my love for you nor how highly I respect you. Your life is a wonderful example to all and that alone is a tremendous help. Sometimes I have wished that your conscientiousness might relax a little and allow you to take better care of yourself. Human machinery will wear out if proper care is not given it, so do be cautious.

" God bless you and your work. Your life should be a very happy one for you give so much happiness to others.

" With my love,

" Very affectionately yours,

"S. M. W."

Dr. Burgess was cited. He filed no objection to the account and did not appear in the proceeding. No proof has been presented to the court other than that recited in subdivision 4 of Schedule L of the account. The letter was written more than three years

before deceased died. In its first paragraph it refers to an intention to confer a benefit on Dr. Burgess during the next following year. Apparently deceased had in mind the possibility of her death at about the time when she wrote the letter. Its second paragraph begins with the locution, " If anything happens to me I want you to keep the contents * * *." The court holds that the facts presented in the schedule show only an abortive attempt to make a testamentary gift. There is here neither declaration of present ownership of the cash by Dr. Burgess nor declaration of a holding of it in trust for him. On the contrary, the sum was plainly intended by deceased to be a reserve to assure a benefit to Dr. Burgess during the year 1934 or possibly to assure a benefit to him when deceased died. The gift failing, the cash is held to be an asset of the estate.

Satisfactory proof having been made in support of the personal claims of the corporate executor, such claims are allowed as scheduled.

Submit, on notice, decree settling the account accordingly.