S. Samuel DiFalco, S.
The testator’s will bequeaths shares of corporate stock and the entire residuary estate to a charity. Pursuant to EPTL 5-3.3 a daughter of the testator elected to contest the bequests to the charity and this proceeding was instituted by the executors to determine the validity of the daughter’s election. The petition of the executors alleges that the daughter executed an instrument under which she agreed not to contest any charitable disposition which her father should make by will and the executors assert that for such reason, ‘1 among other reasons ’ ’, the election is invalid.
The executors now move for summary judgment upon the ground that, by reason of the text of the will, the daughter is not a person who will receive a pecuniary benefit as a result of an election and, consequently, the daughter is without status to contest the validity of the charitable bequests. The executors do not dispute that the charitable dispositions exceed one half of the testator’s estate remaining after the payment of debts and, for the purpose of this motion, the executors do not rely upon the daughter’s alleged agreement not to contest the charitable provisions of the will.
EPTL 5-3.3 provides in part: “ (a) A person may make a testamentary disposition of his entire estate to any person for a benevolent, charitable, educational, literary, scientific, religious or missionary purpose, provided that if any such disposition is contested by the testator’s surviving issue or parents, it shall be valid only to the extent of one-half of such testator’s estate, wherever situated, after the payment of debts, subject to the following:
*934 “ (1) An issue or parent may not contest a disposition as invalid unless he will receive a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee. ’ ’
It is the position of the daughter that the excess residuary gift to charity passes as intestate property and, as a distributee of the testator, she is entitled to a share of such intestate property. Placing reliance upon the above-quoted statutory provisions, the executors contend that article second of the will prevents the daughter, either as a beneficiary under the will or as a distributee in intestacy, from receiving any benefit from her attempted exercise of an election. Article second of the will reads: “ I make no provision in this will, other than the provision in Article first hereof, for my children, helen norcross ceder and Arthur d. norcross, jr., not from any lack of affection, but because I have adequately provided for their welfare by inter vivos deeds of trust and otherwise.”
While the text of EPTL 5-3.3 (succeeding former section 17 of the Decedent Estate Law) is comparatively new, having become effective on September 1, 1967, the issue here presented is not one of first impression. Matter of Cairo (35 A D 2d 76, unanimously affd. without opn. 29 N Y 2d 527) was concerned with an election asserted by a grandson of the testatrix against a will which contained a clause reading: “ I make no bequest to my grandson, Joseph L. Cairo, * * * for good and sufficient reason.” The Appellate Division said (35 A D 2d 77, 78): “ And so, when the deceased died in November, 1967 there was no automatic failure or lapse of that portion of her gift to charity which exceeded one half of her estate. Of course, there could be a failure or lapse if the gift were contested by someone who stood to benefit by a successful contest. But here is where the deceased’s intent comes in: her will made clear she wanted no part of her estate to go to respondent Cairo. Her estate was to go to her sister and charity. To allow respondent Cairo to contest would be to acknowledge the possibility of his sharing in the estate; and this would be contrary to the deceased’s intent. As stated in Matter of Dammam (12 N Y 2d 500, 506), ‘ a testator’s expressed intent is the only construction guide we need ’.”
The conclusion reached by the Appellate Division was that a testator may avoid the operation of EPTL 5-3.3 by the insertion in his will of a provision that a parent or issue may not receive the benefit of the statute.
The statutory limitation on gifts to charity which preceded EPTL 5-3.3 was introduced into our laws in 1860 and most certainly restricted testamentary dispositions to charity when, and *935 if, the statute was invoked. To this extent, a testator’s intent was defeated. In fact, that was the very purpose of the statute. The objective of the early statute is stated in Trustees of Amherst Coll. v. Ritch (151 N. Y. 282, 334), where the court said: “ It does not compel a testator to leave his property or any part thereof to relatives. It does not prevent him from giving all that he has to charity during his lifetime. It is aimed simply at the giving of an undue proportion to charity by will, when certain near relations have, in the opinion of the legislature, a better claim. As was said by Judge Allen in Chamberlain v. Chamberlain (43 N. Y. 424-440), its object ‘ was to prevent a person upon whom others standing in near relation had claims, from disappointing their just expectations and disinheriting them from pious or philanthropic motives, and the intent was1 to include all public objects, whether religious, charitable or literary. ’ Its theory is not to keep property away from charitable corporations, but to prevent a testator from giving them more than one-half of his net estate at the expense of his wife, child or parent. Its .sole purpose is to protect those natural objects of his bounty from improvident gifts to their neglect. It does not attempt to prescribe the amount or kind of property that the corporations can hold, or to place any limit upon their corporate powers. Its mandate is addressed to testators, not to corporations, which are mentioned only to partly measure the extent of the command. It points toward no public interest, but toward the prevention of what the legislature regarded as a private wrong. It was passed for the benefit of the persons named in it, not for the benefit of the people at large as a measure of state policy. Indeed the state has no policy against institutions of charity or learning. Throughout its history it has shown a deep interest in promoting such objects and in encouraging its citizens to help them.”
It ¡seems apparent that the old statute reflected no antagonism against charities and no legislative attitude different from the present statute and that the legislative purpose was not one to prevent charitable dispositions but only to protect family members if the latter chose to invoke the statute. The statute never has been self-executing. Under the former statute, as under the present ¡statute, the limitations upon a charitable gift became effective only when the statute was made operative by affirmative action on the part of the testator’s relatives. (Matter of Watson, 177 Misc. 308; Matter of Sonderling, 157 Misc. 231; Matter of Kruger, 23 A D 2d 667, affd. 17 N Y 2d 495; Matter of Hills, 264 K Y. 349.)
*936 While changes have been effected by the present statute, such changes have not altered the fundamental legislative purpose to restrict bequests to charity when and if such bequests are challenged by designated relatives of the decedent. One of the latest changes is the requirement that the .relative invoking the statute be a person who will benefit by its operation. This change was accomplished to overcome the possibility that a relative could challenge a charitable gift without any personal benefit to himself, such as the challenge to a preresiduary legacy with the result that the excess gift would fall into a residuary bequest to nonrelatives and the relative who raised the issue would receive nothing. Such a result could be an inducement to connivance between the nonrelative residuary legatee and the complaining relative. In line with this change, the contesting relative is now limited to the amount which he would receive had all persons entitled to contest done so. Another recent change was to deny to a spouse a right to challenge the charitable bequest, the Legislature thinking that a spouse could exercise a right of election under EPTL 5-1.1 and by that method obtain complete relief. In respect of the right of election of a spouse the thought does occur that, if the intention of the decedent is all-controlling as to the operation of EPTL 5-3.3, would it not be equally controlling as to the operation of EPTL 5-1.1? It is to be doubted that any court would hold that the disinheritance of a ispouse could be accomplished by testamentary language but a distinction in this respect between the right of election of a spouse and the right of election challenging an excess gift to charity is not discernible.
It must be accepted that a testator who bequeaths the bulk of his estate to charity intends to prefer the charity over his near relatives. An expression in the will that he is disinheriting his relatives or the insertion in the will of a meager bequest to parents or issue merely confirms the intention made apparent by the large gift to charity. If a testator can defeat the statute by clever craftsmanship, by a mere affirmative statement of intention, the .statute can be rendered futile.
Beliance is had by the executors on EPTL 1-2.18 wherein a will is defined as a declaration or instrument which disposes of property “ or directs how it shall not be disposed of.” It is argued that this definition is decisive of the issue herein and permits a testator not only to disinherit a distributee but to deny a distributee statutory remedies elsewhere provided by the Legislature.
*937 Examination of the Report of the Temporary Commission on the Modification, Revision, and Simplification of the Law of Estates discloses that the occasion for defining a negative direction as a will arose from eases in which a testator attempted to disinherit distributees without making an affirmative bequest to others with the result that, since the will contained no effective disposition of property, it was denied probate (Matter of Hefner, 122 N. Y. S. 2d 252; Matter of Bachmann, 45 Misc 2d 297). The commission concluded that a testator should be permitted to have a negative direction admitted to probate and that such direction should be effective irrespective of the omission of any actual disposition of his property to others. (Fifth Report of Temporary Comm, on Law of Estates, pp. 518-519.)
It is inconceivable that the commission which revised many statutes, including the statutes granting the right of election to a surviving spouse and the right of the issue and parents to elect against an excessive charitable bequest, ever intended to emasculate these elective statutes by its definition of a will. The cure attempted by the definition in EPTL 1-2.18 must be confined to the ailment for which it was prescribed.
Under the doctrine of stare decisis, the motion for summary judgment can be denied only if a distinction can be drawn between the language of the will considered in Cairo (35 A D 2d 76, supra) and the language of the will now before this court. In Cairo, the locution was: “ I make no bequest * * * for good and sufficient reason ”. Here the text is “ I make no provision in this will, other than the provision in Article first hereof * * * because I have adequately provided for their welfare by inter vivos deeds of trust and otherwise ”. Comparing these expressions of intention, it appears that each decedent intended to confine the benefit given to the relative to the language of the will and certainly did not intend that the gift to charity be diminished. But what testator does intend to have his will defeated?
In Cairo, the intent of the testatrix to deprive her grandson and other named individuals of any benefit by reason' of her death is crystal clear. Whether or not good and sufficient reason exists for this disinheritance, the testatrix uttered a strong statement. The testamentary statement in the case at bar is not one of disinheritance and in fact the will provides substantial benefits to the testator’s children, expresses affection for them and refers to benefits conferred upon the children during the lifetime of the testatrix. An intent to deprive these dis *938 tributees of property which might pass to them through intestacy is not evident in the will and, for this, reason, Matter of Cairo is distinguishable.
The motion for summary judgment is denied.