Millard L. Midomtck, S.
The testator died on February 25, 1970, survived by his widow and two infant children. Following the probate of the testator’s will the mother of the children, as their guardian, served and recorded notices of election, pursuant to EPTL 5-3.3, contesting the charitable disposition in the will upon the ground that the amount of such charitable gift exceeded the limitation imposed by the cited statute. The widow died on August 26,1970.
The executors thereafter instituted this proceeding to determine the validity of the elections asserted on behalf of the testator’s children. One child is now of age and appears by her attorney. The other child appears by his guardian.
EPTL 5-3.3 provides:
“ (a) A person may make a testamentary disposition of his entire estate to any person for a benevolent, charitable, educational, literary, scientific, religious or missionary purpose, provided that if any such disposition is contested by the testator’s surviving issue or parents, it shall be valid only to the extent of one-half of such testator’s estate, wherever situated, after the payment of debts, subject to the following:
“ (1) An issue or parent may not contest a disposition as invalid unless he will receive a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee.”
*75 The testator was a modern painter of high reputation. His will bequeaths five of his paintings to the Tate G-allery, London, devises and bequeaths a dwelling and its contents together with the sum of $250,000 to his widow and bequeaths the residuary estate to the Mark Rothko Foundation, a nonprofit organization.
Article FIFTH of the will contains substitutionary gifts to the testator’s children. That article reads:
“ FIFTH: In the event of the death of my wife or the simultaneous death of myself and my wife, I give, devise and bequeath the sum of Two Hundred Fifty Thousand ($250,000) Dollars, together with the real property at 118 East 95th Street, New York, and all the contents thereof, in equal shares to my children, KATE and CHRISTOPHER.”
This estate is of substantial value and is alleged in the petition in this proceeding to be in excess of $1,000,000. Other litigation pending in this estate involves issues in which contentions are made that the testator’s paintings have a market value of several millions of dollars and in such litigation a contract executed by the executors for the sale of approximately one eighth of the testator’s works for $1,800,000 is challenged as inadequate. There can be no dispute that the testator disposed of more than one half of his estate for the purposes referred to in EPTL 5-3.3 (subd. [a]) and, if this statute is applicable, the issue of the testator, as intestate distributees, are entitled to invoke the benefit of the statute.
The significance of EPTL 5-3.3 was considered in Matter of Cairo (35 A D 2d 76, affd. without opn. 29 N Y 2d 527). In that case had the decedent died intestate her grandson would have been her statutory distributee and as such distributee, he contested a testamentary disposition which concededly exceeded one half of the testatrix’s estate. The rationale of the Appellate Division opinion was that this grandchild lacked standing to contest the charitable disposition in his grandmother’s will because that instrument contained a clause reading: “ I make no bequest to my grandson [and others] for good and sufficient reason.” The thinking of the court was that the intention of the testatrix was controlling and it was her privilege, not only to disinherit her grandson in her will, but also, by appropriate testamentary language, to render EPTL 5-3.3 inoperative. The court stated that, because the testatrix expressed an intention to make no bequest to her grandson, she not merely barred him from participation in her estate under her will but also deprived him of a status as her statutory distributee and thus prevented him from qualifying under the terms of the statute as a person *76 entitled to receive “ a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee. ’ ’
More recently EPTL 5-3.3 was applied in Matter of Norcross (67 Misc 2d 932, affd. upon the opinion of Di Falco, S., 39 A D 2d 874). The opinion of Surrogate Di Falco, adopted by the Appellate Division, discussed the history of the statute and, to some extent, its operation since its inception in different language in the year 1860. That opinion called attention to the fact, that the right of election formerly granted to a spouse to contest ap excessive charitable disposition has been eliminated from our statutory law in the belief that the right of election granted to a spouse by EPTL 5-1.1 provides full and sufficient relief to a surviving spouse. In this connection the Surrogate’s opinion referred to the possibility that the rationale of the Cairo decision, if equally applicable to the right of election granted to a spouse, could nullify such election, and by a simple testamentary direction, render a surviving spouse without a right to participate in an estate.
Since the Norcross opinion fully discussed the legislative intention expressed in the statute and also prior judicial interpretations of the predecessor statutes, no purpose would be served by any attempt at this time to elaborate on the well-reasoned opinion of Surrogate Di Falco, expressly adopted by the Appellate Division.
Becognizing the controlling effect of1 the Cairo decision, Surrogate Di Falco found that the will in the Norcross case lacked the intention which the courts had found so significant in Cairo. The expressions of affection for issue manifest in the Norcross will, so contrary to the words of disinheritance appearing in the Cairo will, required that these obviously different expressions of testamentary intent be distinguished and impelled the conclusion in Norcross that the statute be applied for the benefit of the there electing daughfm*
The case at bar is quite comparable to the Norcross case in respect of the testator’s attitude toward his children. This will lacks any expression of purpose to disinherit, but, quite logically, provided in the first instance for the mother of the children, who were infants at the time of the will’s execution, and provided substitutionary gifts to the children in the event their mother predeceased the testator or died simultaneously with him. There exists no basis for a conclusion that this decedent ever intended to disinherit his issue in every event, as was found to be the fact in the Cairo decision.
*77 The conclusion of the court is that the appellate ruling in Nor cross is controlling and the children of this testator have validly elected within the provisions of EPTL 5-3.3.
The petition of the executors to construe the last will and testament of the decedent is resolved by decision that the said notices of election on behalf of his two children dated July 13,. 1970 under EPTL 5-3.3 are hereby declared valid and effective.
The determination here made disposes of and requires denial of the motions to dismiss the petition or in the alternative to stay this proceeding.
So much for the law as it is. Now follows a discussion to seek improvement by the Legislature. Our State’s policy in this area is not clear cut, it is conflicting. On the one hand our Legislature wisely seeks to secure the free enterprise of our citizens by permitting inter vivos and testamentary transfers of wealth to family, to extended family, to friend, and to charitable uses, indeed to anyone favored by a competent and uncoerced donor or testator. On the other hand, the ancient rights of a widow’s dower and a widower’s courtesy in real property have been replaced by the right of election granted to a loyal spouse to take a substantial interest in a decedent’s net estate (both real and personal property) despite the apparent direction by will to disinherit an innocent spouse completely. With respect to issue, the policy is less dear, since issue can be disinherited unquestionably, even though they be the testator’s defenseless babies in the cradle, in favor of any human being whether related to the testator or totally unrelated. However, a gift to charity, no matter how worthy, if it comprises more than 50% of the testator’s estate is subject to an election by the parents or any issue of the testator (even remote great-grandchildren). (EPTL 5-3.3, subd. [a].) But issue can still be disinherited in favor of charity by a skilled will draftsman, because an issue or parent may only contest a charitable bequest if he will receive a pecuniary benefit from a successful challenge, either as. a legatee or distributee. (EPTL 5-3.3, subd. [a], par. [1].) Thus an issue is deprived of standing to make an election against a charity if the testator makes a gift over of a failed gift to charity to some unrelated person. The Cairo case enlarges this legislatively created loophole by applying it when the testator clearly expresses an intent to disinherit issue in all events, even when no gift over is made. Among all of these conflicting cross currents of legislative and judicial policies, no acknowledgement is given to a more fundamental legislative policy, that of the protection and support of very young and quite defenseless chil *78 dren. Living parents are required by the laws of New York (and of every jurisdiction in the Union) to support their young children reasonably while the parents are alive. However, under present New York laws a parent can utterly disinherit his minor children (and leave the burden of their support to equally defenseless taxpayers) from the moment of death. If such an unconscionable financial abandonment of young children is forbidden by the family laws and by the criminal laws while a parent is alive, why should death of a wealthy parent free him or her to make a young minor child destitute 1
The Foley Commission on Estates of 1930, which recommended legislative creation of the spouse’s elective share, noted this problem of disinheritance of children, as one requiring study and attention. In 1965 the Bennett Commission on Estates sought to remedy this deficiency in our law by recommending enactment of a Family Maintenance Act. (See Surrogate’s Court as a Family Protector, Midonick and Bush, N. Y. L. J., Nov. 4, 1971, p. 1, col. 4.) It is respectfully urged upon the Legislature to review the laws and to consider conferring upon the Surrogate’s Court the power to impose temporarily reasonable support in all solvent decedents’ estates. Such discretionary power would be similar to the-powers of the Supreme Court and the Family Court while parents are alive. Thus young children who are without independent means or other support and who have had the misfortune of losing both parents will not be in danger, of becoming public charges, to the detriment- of both themselves and the taxpayers, if reasonable and necessary support is not provided for them by the will. This mandated support need not involve forced heirship as in European legal systems unrelated to our legal and social history, but merely temporary support until the child is able to support himself or until he reaches majority, whichever is sooner. It would be similar to the present law under which a parent is now required to provide support in accordance with his means and the needs of the minor child while the parent is alive.
Such a legislative plan need not encumber estates any more than testamentary trusts do now, since at or before the executors’ accounting, such a provision for minor children can be imposed in the form of a trust, as so many wills now provide without the compulsion of law. The amount and terms of such “ elective ” trusts could be left to the sound discretion of the Surrogates, just as the Supreme Court and Family Court now regulate minor child support by live parents; such a solution was proposed by the Bennett Commission in the Family Main *79 tenance Act which it sponsored. An alternative solution is that the Legislature can promulgate a formula for such trusts in the manner that the spouses’ election is now regulated. Remainders after the child becomes of age or sooner self-supporting, may be disposed of in accordance with a decedent’s will. Where such a trust would disturb or disrupt a testamentary plan, an equitable apportionment of the contributions to be taken from each testamentary gift to go into the children’s share would have to be made. Such apportionment is presently made in cases involving the spouse’s right of election. (Matter of Wittner, 200 Misc. 957.)