In the Matter of the Estate of JULIA ECKART, Deceased. CARL KRAMER, Appellant; ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Intervenor-Appellant; CHARLOTTE A. ECKART et al., Respondents.

Second Department, May 19, 1975

*Koozman & Hartman (George H. Hartman* and *Emory Gardiner* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Anthony S. Urso* and *Samuel A. Hirshowitz* of counsel), for ultimate charitable beneficiaries.

*Daniel Danzig (William P. Laino* of counsel), for respondents.

The decree of the Surrogate's Court, Queens County, dated May 16, 1973, should be affirmed.

MARTUSCELLO, Acting P. J., and COHALAN, J., concur, on the opinion of Surrogate LAURINO.

CHRIST, J. (concurring). I concur with the affirmance of the decree under review, but my reasons for so holding differ from my associates.

This appeal concerns the right of certain persons to contest testamentary charitable distributions.* The issue is not new and, in fact, has previously been determined by this court in *Matter of Cairo* (35 AD2d 76, affd 29 NY2d 527). The affirmance by the Court of Appeals was without opinion. That decision has been strongly criticized by commentators and legal periodicals alike, and courts have struggled to distinguish and avoid its holding (see *Matter of Norcross,* 67 Misc 2d 932, affd 39 AD2d 874; *Matter of Rothko,* 71 Misc 2d 74;

---

* Specifically, EPTL 5-3.3 pertains to testamentary dispositions to any person for "a benevolent, charitable, educational, literary, scientific, religious or missionary purpose". For purposes of this opinion, the term "charitable" will be used to describe all of these purposes.

Tarbox, Part Three-Property Law; Decedents' Estates, 25 Syracuse L. Rev. 253, 263). Upon re-examining *Cairo,* I believe, as the learned Surrogate below did, that it was decided erroneously and that it distorts the public policy of this State as declared in and intended by statute.

In *Cairo,* the testatrix was survived by a sister and a grandson. The will was neither lengthy nor intricate and it was clear, as the court held, that the testatrix had wished to disinherit her grandson. With the exception of a co-operative apartment and certain furnishings distributed to the testatrix's sister, the bulk of her estate was to pass to three named charities. The disinheritance clause reads as follows: "I make no bequest to my grandson, Joseph L. Cairo, and I make no bequests to my daughters-in-law, Antoinette Cairo and Audrey Cairo, for good and sufficient reason." Despite the clear wording of EPTL 5-3.3 this court determined that the grandson could not contest the charitable bequest and thereby share in the estate because "her will made clear she wanted no part of her estate to go to" her grandson and that to allow him to partake "would be contrary to the deceased's intent" (p 78). This intent in *Cairo* was subsequently referred to as a "crystal clear" intent to disinherit *(Matter of Norcross, supra,* p 937; see *Matter of Eckart,* 72 Misc 2d 934).

The facts in the instant appeal are not dissimilar to *Cairo.* Here the deceased passed away in August, 1970, at the age of 75 years. She was survived by a son, Frank, and a daughter, Charlotte. Her will, executed on August 4, 1966, is short and simple and includes the three following clauses:

"THIRD: Should they survive me, I give, devise and bequeath to my daughter, CHARLOTTE ANNA ECKART, and to FRANK DARMODY, the son of my divorced husband, Patrick Darmody, the sum of Fifty Dollars each.

"FOURTH: For reasons that to me are good and sufficient, I make no further testamentary provision for my said daughter and Frank Darmody, and I intentionally make no provision for any other of my relatives.

"FIFTH: All of the rest and residue of my property, real and personal, wheresoever situated, owned by me at my death, I give, devise and bequeath to WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, a nonprofit corporation with main office and principal place of business at 124 Columbia Heights, Brooklyn, New York."

Although Frank Darmody is referred to in the will as the

son of the testatrix's deceased husband, it is undisputed that he is her natural son. After the will was probated, the two children contested the charitable legacy to Watch Tower pursuant to EPTL 5-3.3. Surrogate LAURINO declared the contests valid and reduced the charitable bequest accordingly. In an opinion expressing dissatisfaction with *Cairo,* he determined that the testatrix's will did not evince a clear intent to disinherit the children.

I agree with the result achieved by the Surrogate, but I cannot agree that the wills reflect different intentions as to disinheritance. In the *Cairo* will, the testatrix intended to give nothing to her grandson and she so stated in her will. In the Eckart will, the testatrix gave $50 each to her children and stated they should receive no more. Yet in *Cairo,* the grandson, in fact, got nothing, while here the intention of the testatrix is thwarted by giving a substantial inheritance to the contestants in excess of their $50 legacies. In the cases considering this question Surrogates have struggled to give effect to the statute notwithstanding the *Cairo* decision and they have been hard put to find a difference so as to distinguish *Cairo.* The difficulty of distinguishing the effect of a nominal bequest of $50 from that of a will which leaves nothing can be seen by comparing the views of the dissenters in this case with the Surrogate below. The error in *Cairo* is the search for the testatrix's intention when the statute is designed to make that intention immaterial. In fact, it presumes that the testatrix intended to give more than one half of her estate to charity and to cut off the issue and/or parent. The very object of EPTL 5-3.3 is to limit what a testator can do in his will by preventing the disinheritance of the family, at the expense of a charity. Unfortunately, *Cairo* fails to perceive this limitation and in so doing destroys the fulfillment of the legislative purpose.

This statutory provision is not new and has been embodied in our law for many years. The mortmain statutes of England were the forbears of EPTL 5-3.3 although they had a different objective. The early acts were specifically directed at excessive accumulations of wealth by religious organizations. On the other hand, the philosophy of our present statute is the protection of certain family members *(Matter of Watson,* 177 Misc 308, 314; see, also, *Trustees of Amherst Coll. v Ritch,* 151 NY 282; *Chamberlain v Chamberlain,* 43 NY 424).

The statutory history of charitable legacy restraint in this

State can readily be divided into three stages. From approximately 1860 to 1930 the statute provided that no more than one half of an estate could be devised or bequeathed to charitable organizations if a testator were survived by a spouse, parent or issue. Any amount distributed in excess of this would lapse. However, the distribution was not void per se, but voidable by affirmative action of someone, not necessarily the presently enumerated protected persons (see, e.g., *Decker v Vreeland,* 220 NY 326; Standing To Contest Wills Violating Charitable Bequest Statutes, 50 Col L Rev 94, 96–97). This anomaly which permitted a protest by someone other than those enumerated in the statute caused the "Foley Commission" prior to 1930 to recommend an amendment to the provision (see Fourth Report, Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates [NY Legis. Doc., 1965, No. 19], Report No. 1.9A, pp 206, 220–223). Thus, a second stage evolved. The same protected classes were preserved, but the statute mandated that only a person in the enumerated class could contest the excessive charitable gift (L 1929, ch 229, § 3, amdg former Decedent Estate Law, § 17). But, again, it was not specifically provided that the contestant should be the recipient of the contested and excised portion, either under the terms of the will itself or by the laws of intestacy should the excised portion lapse (see, e.g., *Matter of Washburn,* 12 AD2d 856).

Nevertheless, that provision was retained in our law for approximately 37 years until the enactment of the EPTL, when the Legislature empaneled the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, under the chairmanship of Surrogate JOHN D. BENNETT. The Bennett Commission made an exhaustive analysis of the estate law and over the course of several years made recommendations concerning, among other things, charitable gifts. Many of these suggested changes were favorably acted upon by the Legislature and are presently contained in the EPTL.

One of these changes was a restricted definition of the terms "issue" and "parent". The commission proposed that only an individual who could benefit by a successful contest should be permitted to contest (Fourth Report of the commission *[supra],* pp 213–214, 228; Revisers' Notes in McKinney's Cons. Laws of NY, Book 17B, EPTL, p 785, which, in fact, indicate that the

clause thus limiting the individuals who may contest was enacted to change the result of *Matter of Washburn, supra; Matter of Norcross,* 67 Misc 2d 932, affd 39 AD2d 874, *supra;* Arenson, Restrictions on Testamentary Gifts to Charities in New York, 8 NY Law Forum 385, 401 [1962]).

Accordingly, EPTL 5-3.3 now reads as follows:

"Limitations on testamentary dispositions for charitable and other purposes.

"(a) A person may make a testamentary disposition of his entire estate to any person for a benevolent, charitable, educational, literary, scientific, religious or missionary purpose, provided that if any such disposition is contested by the testator's surviving issue or parents, it shall be valid only to the extent of one-half of such testator's estate, wherever situated, after the payment of debts, subject to the following:

"(1) An issue or parent may not contest a disposition as invalid unless he will receive a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee."

Thus, as the statute now provides, only an issue or a parent who will receive a pecuniary benefit as provided in paragraph (1) of subdivision (a) may contest. For example, if a charitable organization is a specific legatee, a contest would cause the excess to pass to the residuary legatee (providing the will does not provide for an alternative) and only that legatee, if an issue or a parent, may contest. In another situation, if the charitable gift be contained within the residuary clause (and no alternative is provided) a contest would cause the excess to pass in intestacy and only an issue or a parent entitled under the laws of distribution may contest. This is the situation obtaining herein and in *Cairo.* In each case the charity is the residuary legatee and the successful contest throws the excess out of the residue and into intestacy in which the contestants participate under the statute of distribution.

The language of EPTL 5-3.3 is clear and unequivocal. It applies to situations where issue or parents are disfavored by an excessive charitable gift. If *Cairo* be followed, we shall continue to abrogate the legislative enactment. This is neither consistent with a reading of the statute nor its legislative history. As one commentator rather aptly noted, *Cairo* "as a practical matter * * * emasculated EPTL 5-3.3" (Tarbox, Part Three—Property Law, Decedents' Estates, 25 Syracuse L Rev 253, 263). In fact, if the *Cairo* rationale be continued one

would assume that a testator could disinherit his wife not-withstanding the statutory right of election. For the clear intent of the testator would be controlling and would supplant the legislative enactment (see *Matter of Norcross, supra,* p 936). No one would gainsay the impermissibility of that result and yet logically it would follow.

It follows therefore, that the testatrix's two children are issue who stand to benefit from a contest of her charitable legacy under the law of intestacy. As such, no more than one half of the estate may pass to Watch Tower, with the two contestants sharing the excised portion equally.

While this examination of the *Cairo* rationale is being made there should also be noted some inherent weaknesses in the statutory provision itself. A testator, even under the statute, may disinherit his parents or his issue and leave his estate to charity. He can do it by a simple device. He can direct in his will that his entire estate shall go to charity and further provide that if a contest be made the excised portion should be distributed to a beneficiary who is neither a parent nor an issue. Since no one in the preferred class will benefit by the contest no one may question the distribution. Thus, without a qualified contestant, the charity retains the entire amount of the bequest and even the alternate legatee is left out of the distribution (see, e.g., *Matter of Fitzgerald,* 72 Misc 2d 472). This illusory legatee neither gives nor receives, he never acts, yet by the use of his name alone the disposition of an estate may be changed.

There are, undoubtedly, other facets of this problem (see, e g., *Matter of Rothko,* 71 Misc 2d 74, 77–78, *supra,* where Surrogate MIDONICK noted the lack of protection for infant issue and called for the enactment of a Family Maintenance Act; see, also, Fifth Report [NY Legis. Doc., 1966, No. 19], pp 36–38; Sixth and Final Report [NY Legis. Doc., 1967, No. 19], p 17). By all of the foregoing I have wished to show the need for the reanalysis of this provision by the Legislature and the Court of Appeals.

LATHAM and SHAPIRO, JJ. (dissenting). We find that by her will the testatrix intended to and did disinherit her children, the petitioners, except for the nominal legacies of $50 each. These nominal legacies, in our view, tend to support the testatrix's intent to disinherit them. Thus, the decision in *Matter of Cairo* (35 AD2d 76, affd 29 NY2d 527), on facts almost identical to those in this case, is controlling and must

be followed. The notices of election should therefore have been declared invalid.

The legislative trend has been to reduce restrictions on charitable bequests, apparently because children sometimes deserve to be cut out of their parents' wills and because many people find comfort in their religion. As the concurring opinion of Mr. Justice CHRIST so eruditely demonstrates, from 1860 to the present the restrictions on who must be granted bequests have gradually been reduced to those set forth in the statute here under consideration (see, also, Practice Commentary to EPTL 5-3.3 in McKinney's Cons. Laws of NY, Book 17B, EPTL). So far as our research discloses "forced heirship", a concept foreign to our legal philosphy, is retained in only two of the "civil law" States.

The intent of a testator has always been the touchstone of testamentary interpretation. The clear intent of the testatrix in the will under consideration was to cut off the children with a nominal $50 bequest. That intent should not here be ignored.

*Matter of Norcross* (67 Misc 2d 932, affd 39 AD2d 874) and *Matter of Rothko* (71 Misc 2d 74), relied on by the Surrogate for sustaining the notices of election here, are not controlling, in view of *Cairo (supra).* Moreover, they are distinguishable from the situation at bar in that the respective testators therein made substantial testamentary and *inter vivos* gifts to their respective issue, and the wills therein show affection and beneficence for the issue, whereas at bar there is no such showing. Further, the Surrogate noted at bar that no hearing was requested by the petitioners, indicating that they did not seek to establish that their relationship with their mother was such that it was unreasonable to assume, as her will indicated, that she had intended to disinherit them.

Thus, the children would not benefit as "a beneficiary under the will or as a distributee" (EPTL 5-3.3, subd [a], par [1]) and may not challenge the charitable disposition. To hold otherwise would implant in our law the anomalous pattern that a testatrix could cut her children off completely and leave her estate to a stranger, but could not cut off her children and leave it to her church which may have given her solace and comfort in her old age.

MARTUSCELLO, Acting P. J., and COHALAN, J., concur, on the opinion of Surrogate LAURINO; CHRIST J., concurs in the result,

with an opinion; LATHAM and SHAPIRO, JJ., dissent and vote to reverse and to adjudge that petitioners are not entitled to take a share of the estate against the will, with an opinion.

Decree of the Surrogate's Court, Queens County, dated May 16, 1973, affirmed, without costs.