Michael A. Telesca, S.
In this proceeding for an interim judicial settlement of his account the executor seeks a determination of the validity of an election under EPTL 5-3.3 made by the testatrix’s surviving daughter against an excessive charitable disposition. The testatrix died on May 15, 1972, leaving a will dated March 6, 1972, which was admitted to probate on January 12, 1973. The will makes no preresiduary bequests and provides in pertinent part as follows:
"Third: During my lifetime, I have expended considerable sums of money for the maintenance and welfare of my daughter, Betty Bullock, and my son, Edward Willey, by reason which expenditures and gifts, I have now intentionally omitted their names as legatees and devisees in this Will, because it is my intention to distribute my Estate as hereinafter provided.
"Fourth: All the rest, residue and remainder of the property which I may own at the time of my death, real and personal, including any property over which I may have any power or testamentary disposition, I give, devise and bequeath to Monroe County Cancer and Leukemia Association of Community Chest, Inc., for its work and research.”
Only Mrs. Willey’s daughter, Betty Bullock, has made an election against the bequest of the residuary estate to charity. The whereabouts of the testatrix’s son, Edward, remains unknown after a diligent search. Therefore, if the election is valid, the daughter will be entitled to receive a portion of the residue. As to the method of computation of the daughter’s share see EPTL 5-3.3 (subd [a]), Matter of Genna (69 Misc 2d 679) and Matter of Hoagland (58 Misc 2d 563).
*382 EPTL 5-3.3 clearly provides that a testator may make a testamentary disposition of his entire estate for charitable purposes "provided that if any such disposition is contested by the testator’s surviving issue or parents, it shall be valid only to the extent of one-half of such testator’s estate”. The right of surviving issue to contest the validity of an excessive charitable disposition is permissible only when such issue "will receive a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee.” (EPTL 5-3.3, subd [a], par [1].)
The court finds that the election is valid for the reason that Betty Bullock will receive a pecuniary benefit from the contest as a distributee. In reaching this conclusion the court gives effect to the clear language of the statute which affords surviving issue a personal right, not found at common law, to contest the validity of a charitable bequest where it exceeds one half of the testator’s gross estate less debts.
The court is mindful of the decision in Matter of Cairo (35 AD2d 76, affd without opn 29 NY2d 527)*, wherein the Appellate Division, Second Department, in 1970 formulated the theory that if the will shows a dominant charitable intent coupled with a specific intent to disinherit named issue then such issue cannot validly elect under EPTL 5-3.3.
The fact that this theory is difficult to adhere to has become manifest in the well-reasoned decisions of my learned colleagues. (Matter of Norcross, 67 Misc 2d 932, affd on opn of Surrogate Di Falco, 39 AD2d 874; Matter of Rothko, 71 Misc 2d 74, 76-77; Matter of Eckart, 72 Misc 2d 934, affd 48 AD2d 61.)
In Norcross testator made provision for his children in his will and bequeathed stock and the entire residuary estate to charity. He specifically stated that he made no further provision for his children and that this was not due to any lack of affection but because he had adequately provided for them by way of inter vivos trusts and otherwise. In reaching the conclusion the daughter’s election was valid Surrogate Di Falco noted (pp 934-935): "The statutory limitation on gifts to charity which preceded EPTL 5-3.3 was introduced into our laws in 1860 and most certainly restricted testamentary dispo *383 sitions to charity when, and if, the statute was invoked. To this extent, a testator’s intent was defeated. In fact, that was the very purpose of the statute.”
Surrogate Di Falco decided that Cairo, wherein a crystal clear intent to disinherit had been manifested, was distinguishable from Norcross, where the will provided substantial benefits for testator’s children, expressed affection for them and referred to financial benefits conferred upon them during the testator’s lifetime.
In Rothko Surrogate Midonick found an intent to disinherit testator’s children was rebutted by an alternate provision for them of a quarter million dollars in the event their mother predeceased or died simultaneously with the testator. In reaching this determination Surrogate Midonick stqted (p 76): "There exists no basis for a conclusion that this decedent ever intended to disinherit his issue in every event, as was found to be the fact in the Cairo decision.”
Cairo was most recently distinguished in Eckart. Surrogate Laurino had found that although there was a dominant charitable intent expressed in the will, the intent to disinherit testatrix’s son entirely was refuted by a legacy of $50 to him. The Surrogate’s decree was affirmed by a closely divided court. (Matter of Eckart, 48 AD2d 61, supra.)
Justice Christ, a member of the court that decided Cairo, stated in his concurring opinion in Eckart (p 63): "Upon reexamining Cairo, I believe, as the learned Surrogate below did, that it was decided erroneously and that it distorts the public policy of this State as declared in and intended by statute.”
Noting the problems inherent in distinguishing the effect of a will with a nominal bequest of $50 from a will which left nothing to the contesting issue, Justice Christ further stated (p 64): "The error in Cairo is the search for the testatrix’s intention when the statute is designed to make that intention immaterial. In fact, it presumes that the testatrix intended to give more than one half of her estate to charity and to cut off the issue and/or parent. The very object of EPTL 5-3.3 is to limit what a testator can do in his will by preventing the disinheritance of the family, at the expense of a charity. Unfortunately, Cairo fails to perceive this limitation and in so doing destroys the fulfillment of the legislative purpose.”
This court adopts such reasoning, similarly expressed in Norcross (p 936), since it appears consonant with the legisla *384 tive purpose underlying the governing statute. Furthermore, a reading of paragraph Third of testatrix’s will discloses that she was not specifically disinheriting her children in all events but was explaining why she made her will as she did. That such is the meaning of paragraph Third is further reinforced by a (hypothetical) substitution of a predeceased friend as residuary legatee, in which event the will would not be read to exclude the children from inheriting the testatrix’s intestate property.
Every will which bequeaths the estate to charity impliedly disinherits issue. Cairo does not stand for the proposition that an implied disinheritance excludes issue from contesting an excessive charitable bequest. At most the decision of the Appellate Division deals with an express disinheritance.
Since the legislative history and purposes of the statute are fully presented in Norcross, Rothko and Eckart, this court need not now discuss such matters.
The right of issue to elect against an excessive charitable disposition is a limitation on the right of a testator to dispose of his property and is a personal right conferred by the Legislature which cannot be diminished or abrogated by judicial construction.
The statutory purpose is manifest. Issue have a qualified right to contest an excessive charitable bequest even if they receive nothing or merely a token bequest. It is idle ceremony to look to the will for a disinheritance where the result is disinheritance. To do otherwise would create confusion in the search for an intent to disinherit. The statute neither mentions nor requires such a search. It should be unnecessary to search for some element of affection, a token legacy, an alternate bequest or a reference to financial benefits conferred by the testator on issue or parents during his lifetime to sustain the rights of such persons under EPTL 5-3.3.
Accordingly, the election against the excessive charitable bequest is declared valid and the share of Betty Bullock shall be set forth in the decree to be submitted to the court. Since the testatrix’s son, whose whereabouts are unknown, has not joined in the election, the remainder of the estate will be distributed to the named charity. (EPTL 5-3.3, subd [a], par [2].)

 It is hornbook law that an affirmance without opinion does not indicate an approval of the reasoning of the court below but only a concurrence in the result. See, e.g., Commissioner of Public Welfare of City of New York v Jackson (265 NY 440, 441.)