Millard L. Midonick, S.
The testator died on November 23, 1975 survived by his adopted son, Ronald Alexander, as his sole distributee. Following the probate of the testator’s will, his adopted son served his notice of election pursuant to EPTL 5-3.3 contesting the charitable disposition in the will on the ground that the amount of such charitable gift exceeded the statutory limitation. The executors then instituted this proceeding to determine the validity of the election; and in the course of this proceeding, we are asked to determine the effect of an in terrorem clause.
The testator’s will makes relatively small preresiduary dispositions, provides for bequests for his son which are quoted *483 below, and the residuary estate is disposed of to a charitable family foundation. It is conceded that the residuary disposition to the charitable foundation exceeds "one-half of such testator’s estate, wherever situated, after the payment of debts” (EPTL 5-3.3, subd [a]). The gross estate is alleged to total $10 million and may have appreciated to almost twice that amount. The parties have agreed in a signed letter agreement in the courtroom on the return day of the citation herein and at a recent conference held with the law department, that a hearing is waived by all parties and the matter be submitted to the court on the papers in lieu of a hearing.
EPTL 5-3.3 provides as follows:
"(a) A person may make a testamentary disposition of his entire estate to any person for a benevolent, charitable, educational, literary, scientific, religious or missionary purpose, provided that if any such disposition is contested by the testator’s surviving issue or parents, it shall be valid only to the extent of one-half of such testator’s estate, wherever situated, after the payment of debts, subject to the following:
"(1) An issue or parent may not contest a disposition as invalid unless he will receive a pecuniary benefit from a successful contest as a beneficiary under the will or as a distributee.”
The testator’s will makes relatively small preresiduary dispositions, some outright, others in trust, among his attorney, a brother, a sister and her husband, two nephews, a niece, a secretary, a chauffeur, and provides the following bequest to his adopted son, the respondent herein:
"tenth: Other than for my personal possessions, I give, devise and bequeath all my right, title and interest in and to the flat at general quisan quai 34, 8002 Zurich, Switzerland to my son, ronald Alexander.
"eleventh: I give, devise and bequeath to my trustee, hereinafter named, in trust nevertheless, a sum sufficient to pay to my son, ronald Alexander, twenty-five thousand ($25,000.00) dollars per annum for a period of fifteen (15) years. If my said son, ronald Alexander shall die before said trust terminates, the principal of said trust shall upon his death, revert to my residuary estate.”
Following the bequests to the respondent quoted above, the will provides as follows: "twelfth: During my lifetime I have made many gifts to my son, ronald Alexander; I have made *484 loans to my son, ronald Alexander and I have paid indebtnesses to others incurred by my son, ronald Alexander. It is my wish and I do hereby direct that if my son, ronald Alexander, shall directly or indirectly oppose the probate of this my last will and testament, then and in such event, the provisions herein named for his benefit shall thereupon be revoked and he shall be excluded from any participation in my Estate and shall cease to have any right, title and interest in and to any portion of my Estate or property and in lieu of any other provisions herein made for his benefit, I hereby give, devise and bequeath to my said son, ronald Alexander, the sum of one ($1.00) dollar which shall be paid to him annually during his lifetime and he shall be accountable and chargeable to my Estate for any and all monies, loans, or payments made by him to or on his behalf.”
The executors allege that the respondent lacks standing to contest the charitable bequest because he will not "receive a pecuniary benefit from a successful contest.” (EPTL 5-3.3, subd [a], par [1].) The import of that provision was recently considered by the Court of Appeals in Matter of Eckart (39 NY2d 493, 497, revg 48 AD2d 61, which affd 72 Misc 2d 934). In that case, the testatrix made bequests of $50 to each of her daughters and her son, and provided that (p 496) "For reasons that to me are good and sufficient, I make no further testamentary provision for [them] * * *, and I intentionally make no provision for any other of my relatives.” The Court of Appeals held that the children did not have standing to contest the charitable disposition in their mother’s will under the holding in Matter of Cairo, (35 AD2d 76, affd without opn 29 NY2d 527), which the court held to be in point, stating in Eckart (39 NY2d 493, 498, supra): "The fourth article of the will, the negative bequest provision, is essentially identical to the one in Cairo. The fact that the testatrix here left the contestants $50 is of no significance. If anything, the grant of a nominal bequest to a close relation is the more accepted or customary way of indicating an intent to disinherit. Nor do we find any merit to the petitioners’ argument that the disinheritance clause should have no effect on their intestate rights since it only refers to 'testamentary’ provisions. No meaningful distinction can be drawn between a clause which expressly leaves 'no bequest’ to the contestant, as in Cairo, and one which makes 'no further testamentary provision’ for his benefit as here. The two clauses are essentially the same and should *485 have the same effect.” The court went on to discuss whether, since Cairo could not be distinguished, it should be followed and decided in the affirmative. The court discussed the history of the statutory provision and the rules of stare decisis, and concluded at that (p 502): "It is the result that counts, and in our view it cannot be said that the result is clearly erroneous or disruptive of the legislative purpose. True, Cairo permits a testator to easily avoid the statute by expressly disinheriting those who might otherwise challenge the will. But the statute itself permits the same result if the testator simply creates a gift over to one not qualified to contest. In other words it is the statute itself and not the Cairo opinion which disrupts the stated legislative purpose. Adoption of a new rule by this court would not alter the net result, and thus there is no compelling reason to change the established rule. If there is to be a constructive change, it should come from the Legislature.”
The case at bar seems very similar to the Eckart situation in respect of the testator’s intention to limit his son’s interest in his estate to the bequests set forth in articles tenth and eleventh of the will. There are no expressions of affection for the son in the testator’s will; indeed, he does not refer to his son as "beloved” as he does his other legatees, including his chauffeur. Moreover, in article twelfth, he clearly explains his reasons for limiting his son’s interest as did the testatrix in Eckart, where the will stated that "for reasons that to me are good and sufficient.” Here, the testator explains that during his lifetime he made many gifts and loans to his son and paid indebtednesses incurred by his son. Thus, the will in this case contains a clear expression of purpose to limit inheritance, unlike the will in Matter of Rothko (71 Misc 2d 74, affd 43 AD2d 819). In that case, this court found (p 76) that the Rothko will "lacks any expression of purpose to disinherit, but, quite logically, provided in the first instance for the mother of the children, who were infants at the time of the will’s execution, and provided substitutionary gifts to the children in the event their mother predeceased the testator or died simultaneously with him.” Moreover, in Rothko, there were no words of explanation and intent to limit inheritance such as those in article twelfth of this testator’s will.
This court accordingly concludes that the ultimate reasoning of the Court of Appeals in Eckart is controlling and *486 therefore, the respondent has no standing to elect within the provisions of EPTL 5-3.3.
The executors allege as a second issue that article twelfth of the will, quoted above, is also a "no contest” clause (EPTL 3-3.5), and that the contest to limit the charitable disposition by the son will result in a forfeiture of his dispositions under the will. The court will determine this issue at this time since it has been discussed and briefed by both sides, and deferring it would only fragment and confuse the estate’s administration, despite the executors’ position that the issue need not be decided herein.
Firstly, the language of the will at hand expressly states that a forfeiture will result if the respondent "directly or indirectly” opposes "the probate” of the will. Contesting the charitable disposition is not an opposition to probate, it is an election made after the will has been admitted to probate (cf. Matter of Clocke, 100 NYS2d 715). More importantly is the -general rule in this State that in terrorem clauses must be strictly construed and are not favored by the courts. (Matter of Ball, 57 Misc 2d 683; Matter of Cohn, NYLJ, Nov. 23, 1965, p 16, col 3, affd 26 AD2d 617.) In a case directly on point, the Court of Appeals has held that a challenge to the validity of an excessive charitable gift cannot result in a disinheritance under an in terrorem clause (Unger v Loewy, 236 NY 73, 78). This rule was followed by Surrogate Laurino in Matter of Eckart (72 Misc 2d 934, 935) and the Court of Appeals did not refer to the in terrorem clause in its reversal of his decision (39 NY2d 493, supra). Therefore, respondent’s election has not violated the in terrorem clause contained in article twelfth of the will. This decision thus serves to construe the decedent’s will and determines that the respondent’s election under EPTL 5-3.3 is invalid and ineffective but does not violate the provisions of article twelfth. Therefore, respondent is entitled to receive the bequests provided for in articles tenth and eleventh of the will.
It should be noted that this will was executed on October 16, 1975, long after the date on which EPTL 5-3.3 (subd [a], par [1]) was enacted and Matter of Cairo (35 AD2d 76, supra) was decided but prior to the Court of Appeals decision in Matter of Eckart (supra), which is nevertheless binding on this court. The Sixth Report of the Commission on Estates (Legis Doc, March 31, 1967, No. 19, p 16) states that the statute retains the essential objective of its predecessor "to interdict *487 the disinheritance of close kin of the decedent by excessive testamentary dispositions for charitable and similar purposes” but that in order to resolve questions that have been generated judicially it has been made clear that no contest is available to an issue or parent who will not receive a pecuniary benefit from such contest. The respondent in this case is not alleged to be an indigent dependent of the decedent; he is not a minor and refusing him the right to contest the will will not, it appears, frustrate the fundamental legislative policy of protecting and supporting young and defenseless children. Nevertheless, this court is still concerned with our legislative policy and the inaction to date on the part of the Legislature to deal with a serious problem. This court once again urges the Legislature to review the laws and enact the legislative plan discussed in Matter of Rothko (71 Misc 2d 74, 77-79, supra). As was stated therein, under present New York laws, including Matter of Eckart (supra) which further enlarges the legislatively created gift-over loophole contained in EPTL 5-3.3 (subd [a], par [1]), a parent can totally disinherit his minor children from the moment of death.
A current bill now before the Legislature limiting minors’ relief to support not greater than support imposed by court order during the life of the decedent parent, or not greater than support undertaken by written contract of the decedent (S 479 and A 3845 [1977], identical to S 7406 and A 9704 [1976]) has been approved on behalf of the Association of the Bar of the City of New York. It may seem unequal protection to give similar relief to out-of-wedlock infants, "enforceable as a claim” for continuing support until age 21, "against the deceased parent’s estate”, "in an amount to be determined by the surrogate’s court not greater than is provided in” "an order of support or a judicially approved settlement made prior to that parent’s death” under section 513 of the Family Court Act, while denying any such relief to disinherited infants born in wedlock.