### (May 18, 1978)

■ In the Matter of the Estate of JOSEPH ALEXANDER, Deceased. ROBERT WEINTRAUB et al., Respondents-Appellants; RONALD ALEXANDER, Appellant-Respondent.—Decree, Surrogate's Court, New York County, entered July 1, 1977, affirmed on authority of *Matter of Eckart* (39 NY2d 493) and *Matter of Cairo* (35 AD2d 76, affd 29 NY2d 527), and for the reasons stated by Surrogate Midonick *(Matter of Alexander,* 90 Misc 2d 482), with $60 costs and disbursements to all parties appearing separately and filing separate briefs payable out of the estate. Concur—Fein, Lane, Sandler and Sullivan, JJ.; Murphy, P. J., dissents in part in the following memorandum: I agree with the Surrogate that Ronald Alexander (the distributee) has no standing to elect within the provisions of EPTL 5-3.3 (90 Misc 2d 482, 485, 486). However, I disagree with his conclusion that the distributee's election did not violate the *in terrorem* clause contained in article Twelfth of the will (90 Misc 2d 482, 486). Article Twelfth of the will of Joseph Alexander (the testator) reads as follows (90 Misc 2d 482, 483-484): "TWELFTH: During my lifetime I have made many gifts to my son, RONALD ALEXANDER; I have made loans to my son, RONALD ALEXANDER and I have paid indebtnesses to others incurred by my son, RONALD ALEXANDER. It is my wish and I do hereby direct that if my *son,* RONALD ALEXANDER, *shall directly or indirectly oppose the probate of this my* LAST WILL AND TESTAMENT, then and in such event, the provisions herein named for his benefit shall thereupon be revoked and he shall be excluded from any participation in my Estate and shall cease to have any right, title and interest in and to any portion of my Estate or property and in lieu of any other provisions herein made for his benefit, I hereby give, devise and bequeath to my said son, RONALD ALEXANDER, the

sum of ONE ($1.00) DOLLAR which shall be paid to him annually during his lifetime and he shall be accountable and chargeable to my Estate for any and all monies, loans, or payments made by him to or on his behalf." (Emphasis supplied.) To resolve the question of whether there has been a forfeiture as a result of the distributee's election, this court must reconcile two competing principles of law in this area. First of all, a will is ordinarily interpreted to reflect the testator's actual intent as ascertained from a reading of the whole will. (Matter of Cairo, 35 AD2d 76, 77, affd 29 NY2d 527.) Secondly, provisions in a will tending to destroy an estate are not favored in law, and are strictly construed against forfeiture. (Matter of Gaffers, 254 App Div 448, 452.) Weighing these principles, the Surrogate chose to give the word "probate" its most literal denotation. In light of the Surrogate's own analysis of the provisions in the will, I find his interpretation of the word "probate" to be unduly narrow and totally unreflective of the testator's wishes. In particular, it should be emphasized that the Surrogate himself observed (90 Misc 2d 482, 485): "The case at bar seems very similar to the Eckart situation in respect of the testator's intention to limit his son's interest in his estate to the bequests set forth in articles TENTH and ELEVENTH of the will. There are no expressions of affection for the son in the testator's will; indeed, he does not refer to his son as 'beloved' as he does his other legatees, including his chauffeur. Moreover, in article TWELFTH, he clearly explains his reasons for limiting his son's interest as did the testatrix in Eckart, where the will stated that 'for reasons that to me are good and sufficient.' Here, the testator explains that during his lifetime he made many gifts and loans to his son and paid indebtednesses incurred by his son. Thus, the will in this case contains a clear expression of purpose to limit inheritance, unlike the will in Matter of Rothko (71 Misc 2d 74, affd 43 AD2d 819). In that case, this court found (p 76) that the Rothko will 'lacks any expression of purpose to disinherit, but, quite logically, provided in the first instance for the mother of the children, who were infants at the time of the will's execution, and provided substitutionary gifts to the children in the event their mother predeceased the testator or died simultaneously with him.' Moreover, in Rothko, there were no words of explanation and intent to limit inheritance such as those in article TWELFTH of this testator's will." In Chase Nat. Bank v Chicago Tit. & Trust Co. (164 Misc 508, 521-522), the court explored the two basic connotations of the word "probate": "The term 'probate' is commonly used with reference to the formal establishment of a document as the last will and testament of the testator as a basis for the distribution of his property and the issuance of letters testamentary to the persons named therein as executors. Probate, in this sense, usually takes place at the domicile of the testator and seldom is there occasion for its repetition elsewhere, the filing in other jurisdictions of a copy of the original probate proceedings being usually sufficient for all purposes. The term 'probate,' however, also has a broader meaning, including all proceedings incident to the administration and settlement of estates and perhaps also the establishment of the meaning of a will as well as its execution (50 C. J. 423). Etymologically, of course, the word is equivalent to the term 'proof.' It may apply to deeds as well as wills (United States v. Hiawassee Lumber Co., 238 U. S. 553)." There can be little doubt that the draftsman of the subject will intended to use the word "probate" in its broader sense. Surely, the testator did not wish to have his will probated without opposition only to have its charitable aim subsequently defeated upon an election made under EPTL 5-3.3. Article Twelfth was drafted with the specific purpose of discouraging any action on the part of the distributee

that would interfere with, delay or otherwise frustrate the testator's charitable disposition. The distributee's election thus constituted opposition to the probate, as that all-encompassing term is employed in article Twelfth. Since the Legislature has decreed that no-contest provisions are operative (EPTL 3-3.5, subd [b]), the distributee should be precluded from recovering under articles Tenth and Eleventh of the will and he should be relegated to recovery under article Twelfth (cf. *Matter of Cohn*, NYLJ, Nov. 23, 1965, p 16, col 3, affd 26 AD2d 617; see, also, *Matter of Goyette*, 66 Cal Rptr 103; *Matter of Rauf*, 213 So 2d 31, cert den 225 So 2d 524 [Fla]). In passing, it should also be stressed that the distributee's election to set aside the charitable disposition was more than a mere contruction of the will under EPTL 3-3.5 (subd [b], par [3], cl [E]). Furthermore, a careful reading of *Unger v Loewy* (236 NY 73, 78) fails to reveal any holding of the Court of Appeals "that a challenge to the validity of an excessive charitable gift cannot result in disinheritance under an *in terrorem* clause" (90 Misc 2d 482, 486). The statement made at the Appellate Division level that a widow and next of kin could challenge an excess charitable disposition without fear of forfeiture is pure *dictum* since that issue was not raised by the parties *(Unger v Loewy*, 202 App Div 213, 218). In any event, the Appellate Division's statement in this regard is of highly dubious value because its opinion was overturned by the Court of Appeals in a decision that was properly silent on this unraised point. The decree should be modified by reversing so much thereof as permitted the distributee to recover under articles Tenth and Eleventh, by permitting him to recover under article Twelfth, and, as modified, it should be affirmed.