OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court on an order to show cause to extend the time to file objections to probate, coupled with a petition for construction of an in terrorem clause under article fourth of the decedent’s will, by the Buffalo Foundation, a beneficiary of the residuary trust under article fifth.
E. Louise Grupp died September 25, 1992, leaving a taxable estate of almost $2 million. A will dated September 11, 1992, two weeks before the decedent died, has been offered for probate by the executors named therein, Joan E. Maloney, Esq., and Eleanor G. Dunn. A prior will, dated July 9, 1992, has been filed with the court. Petitioner and several other interested parties have examined the will witnesses, who are Ms. Maloney, also the draftsman and attorney for the estate, and John T. Maloney, Esq., her husband and law partner, pursuant to SCPA 1404. The court has extended the date for filing objections pending a decision on the construction issue.
Petitioner, a potential objectant to the September 11, 1992 will, prays for a determination that the no-contest provision of article fourth does not apply to the residuary beneficiaries under article fifth, which include the Buffalo Foundation itself and a number of charities, either specified as recipients of income from the memorial fund to be administered under its auspices or to be designated by it as discretionary income beneficiaries. The Lutheran Church Home, beneficiary of a preresiduary bequest, supports the Foundation’s position. In *409 addition, counsel for the Home, who was also the draftsman of the July 9, 1992 will and prior wills, has submitted an affidavit containing information about the testatrix’s testamentary plan, as articulated to him over the years, which bolsters the argument that the in terrorem clause is not directed at the residuary charities. Joan Maloney has interposed an answer to the Foundation’s petition, while Hospice-Buffalo, a beneficiary of both preresiduary and residuary gifts, and Sharon A. Nitterauer, the decedent’s grandniece and sole distributee, who is a preresiduary beneficiary of tangible personal property and of a $300,000 trust, have opposed the requested relief.
The September 11, 1992 will contains 23 bequests to individuals and charities of either specific dollar amounts, or items of tangible personal property, or a combination of both. In addition, the will sets up the $300,000 trust for Ms. Nitterauer and places another $150,000 in trust for her sons. Ms. Nitterauer receives tangible personal effects and the decedent’s residence.
Article fifth leaves the residue of the decedent’s estate to Manufacturers and Traders Trust Company as trustee for the Buffalo Foundation to be held as a perpetual charitable fund in memory of Mrs. Grupp and her late husband. Nine charities are designated as income beneficiaries of fund assets in various percentages totaling 95% of net income, with the recipients of the remaining 5% to be selected by the Foundation. Article fifth further provides that if the Foundation or any of the other named organizations fail to qualify as a charity as defined in the Internal Revenue Code, that organization’s portion of the fund’s income shall be distributed to such other qualifying charities as the trustee shall select.
Article fourth, which is at issue here, immediately follows the numerous bequests and precedes the residuary clause. It provides as follows: "If any beneficiary under this Will shall in any manner oppose the probate of this Will or any of its provisions in any manner whatsoever, then in such event any share or interest in my estate given to such beneficiary under this Will is hereby revoked and shall be disposed of in the same manner provided herein as if such contesting beneficiary had predeceased me.”
Although none of the parties has raised this issue in its written submissions, this court believes that it must first address the question of whether it can even construe a will *410 before admitting it to probate. We are well aware of the decisional authority and statutory interpretation articulating a theory or general rule that construction of a will must await its probate on the grounds that before the instrument has been probated, there is nothing to construe. (Matter of Davis, 182 NY 468 [1905]; In re Galbreath’s Will, 149 NYS2d 478 [Sur Ct, Suffolk County 1956]; Matter of Lewis, 199 Misc 463 [Sur Ct, Erie County 1950]; Matter of Webb, 122 Misc 129 [Sur Ct, NY County 1923], affd, 208 App Div 793 [1st Dept 1924]; see also, SCPA 1420 [3] [which provides a court, confronted with a construction issue in a probate proceeding, the alternative of disposing of the question upon entry of the probate decree or of admitting the will to probate and reserving the construction for future consideration].)
Like most of the lower court cases following it, the Court of Appeals decision often cited as the basis for this theory involved a dispositive provision of a will, the interpretation of which, according to the Court, could be postponed until the estate was ready to be distributed. In fact, Matter of Davis (supra) originated not as a construction proceeding at all, but as a request to adjudge a proffered will not a valid will (and hence to prevent its probate) on the grounds that because the sole beneficiary and executrix had predeceased, it was ineffective to dispose of property or appoint a fiduciary. There was no dispute over the testatrix’s capacity or the will’s free and proper execution. The Court of Appeals, cautioning that "[t]here is no authority to construe the will for the purpose of defeating probate,” determined that as long as the Surrogate was satisfied that the statutory requirements of due execution, testamentary capacity, and lack of restraint were met, he had no choice but to admit the will to probate. (Matter of Davis, 182 NY 468, 475 [1905].) If these requirements were met, the ineffectiveness or even invalidity (in the case, the Court hypothesized, of a violation of the Rule against Perpetuities) of a dispositive provision could not adversely impact the will’s eligibility for probate. The will had to be admitted and the questioned paragraph construed later.
Such an interpretation, to the Court’s mind, was implicit in the statutory language of section 2624 of the Code of Civil Procedure (a predecessor of SCPA 1420 [3]) which provided that a Surrogate had to determine an issue of the validity, construction, and effect of a disposition of personal property on rendering the probate decree, unless he refused to admit the will because of lack of capacity, lack of due execution, or *411 undue influence. The Court reasoned that the statute "contemplates that unless the will is admitted to probate there is no power to construe it. Probate logically precedes construction, for otherwise there is no will to construe.” (Matter of Davis, supra, at 475.)
The facts of the Davis case (supra) appear to this court to limit its holding to situations in which neither testamentary capacity, nor proper execution, nor undue influence, is at issue, but in which the validity or effect of a particular will provision is questioned. In such a case, there may be no essential need to construe the will before probate. Nevertheless, the Davis determination has been more broadly interpreted and has risen to the status of a general rule. A few cases have extended it to nondispositive testamentary provisions, including no-contest clauses. (See, Matter of Turco, NYLJ, Dec. 21, 1987, at 15, col 6.)
We think that the New York County Surrogate’s Court has, however, at least implicitly, questioned the general rule’s applicability to in terrorem provisions. In Matter of Zurkow (74 Misc 2d 736 [Sur Ct, NY County 1973]), the Surrogate refused to construe an in terrorem clause prior to probate, citing the general rule. But the court essentially rendered the construction sought by the potential objectant in ruling that an examination of the will’s proponent (the testator’s son and attorney) would not violate the clause, since his Putnam affidavit (see, Matter of Putnam, 257 NY 140 [1931]) made him a witness whose examination is permitted under EPTL 3-3.5 (b) (3) (D). In a later case, the same court, after again technically refusing preprobate construction, articulated a position that amounts to the construction of no-contest clauses in all but name: "Nevertheless, this court has taken the position, as to in terrorem clauses in a will, of indicating which disclosure procedures in a probate proceeding do not violate EPTL 3-3.5.” (Matter of Lachman, 100 Misc 2d 21, 25 [Sur Ct, NY County 1979], citing Matter of Zurkow, supra, and Matter of Raubfogel, NYLJ, Oct. 26, 1973, at 18, col 1.)
To this court’s mind, in terrorem clauses are essentially paradoxical in nature, their effect that of a two-edged sword. Although their underlying purpose may be admirable, their potential for harm is great. From a purely policy standpoint, forcing a possible objectant to be sure of the success of his case may prevent needless and costly litigation. But we believe that no public good is served if such provisions foreclose legitimate contests that would insure the probate only of *412 freely and validly executed wills. We note that the awareness of the potentially harmful effect of no-contest clauses has prompted repeated efforts to even the balance between the rights of testators to disinherit contestants and the rights of potential objectants. Courts have consistently construed such clauses strictly, while legislators have exempted certain conduct from their prohibition under EPTL 3-3.5, and expanded the scope of permitted preobjection examinations under SCPA 1404 (the most recent such expansion taking effect Jan. 1, 1994).
This court is of the opinion that a refusal to construe the Grupp in terrorem clause until after probate, in light of the particular facts and circumstances surrounding the will’s preparation and execution, would tip the balance heavily against petitioner and subject it and any other potential charitable objectant to an impermissible risk. In most cases involving a will with two witnesses and two named executors, a party would be able to examine as many as five different people (the attorney-draftsman, two witnesses, two executors) in order to decide whether objections to the will would be warranted and his case would be successful. Here, because those who can be questioned, even under the expanded scope of SCPA 1404, play multiple roles and have similar interests, the extent and scope of the examination available to petitioner is severely restricted. Petitioner can take sworn testimony from only three individuals: the two will witnesses, who are the attorney-draftsperson/coexecutor/proponent and her law partner husband, and the other named executor and proponent, who is also a beneficiary who recommended the attorney-draftsperson to the testatrix.
We believe that the lack of clarity of this particular in terrorem clause itself creates an additional and, we believe, excessive risk for petitioner, a risk beyond that inherent in most such provisions. A potential objectant will find it almost impossible to determine with any degree of certainty to whom the risk of forfeiture under article fourth applies. In all likelihood, the upshot of a refusal to render a judicial construction of the clause before probate would be petitioner’s refusal to hazard a will contest. Such an outcome is all the more probable, in light of petitioner’s peculiar status as an administrator of funds for underlying enumerated and discretionary charities, to which it undoubtedly feels a fiduciary duty, and of its lack of certainty as to whether, under the language of the clause, petitioner’s objections would subject it *413 only, or all other charitable trust recipients to the risk of forfeiture. Were petitioner to decline to file objections, another charity, or perhaps the Attorney-General, seeking to pursue the case, would face the same difficulty in assessing its risk.
This court finds that there are good and compelling reasons to depart from the Davis rule and render a construction in the instant case before admitting the will to probate. First of all, the Grupp situation is factually distinguishable from Davis (182 NY 468, supra). The paragraph at issue is not a dispositive provision, the interpretation of which can be deferred until distribution is pending, but rather a no-contest clause, the impact of which is immediate. Moreover, the case before this court is far from the Davis situation in which testamentary capacity, due execution, and undue influence were not at issue. The facts available to us place those requirements very much in question. The testatrix was elderly, chronically ill, and hospitalized during part of the time she made substantial changes to her estate plan. Less than two months before she died, she abruptly left the attorney with whom she had worked for almost two years and put her legal affairs into the hands of another attorney, not previously known to her, naming her coexecutor in place of a bank with which she had had a long-term relationship. In the 24 months prior to her death, she executed no fewer than six wills. Her last will was signed only two weeks before she died.
We are also concerned that the will offered for probate appears to depart substantially from several of the testatrix’s primary estate planning goals — of saving estate taxes and benefitting her charitable interests — as embodied in prior wills and articulated to her former counsel. Calculations provided by several of the parties indicate that because the September 11 will considerably increases bequests passing to certain individuals at the expense of the charitable residuary, the estate will be subject to substantial estate taxes. The estate now must pay two, rather than one, executors’ commissions. In fact, it appears that there may be insufficient assets, after the payment of these taxes and administration expenses, to fund the charitable residue at all, or to pay the preresiduary bequests in full.
Under SCPA 1408, before admitting a will to probate, this court must "inquire particularly into all the facts” in order to satisfy itself "with the genuineness of the will and the validity of its execution”, along with the testator’s competency and freedom from restraint. At this point in the instant *414 case, we are not yet satisfied that all such requirements were met. To our mind, there are thus strong public policy, as well as equitable, considerations operative here. Citizens of this State have a right to the assurance that only freely and validly executed wills of competent testators will be admitted to probate. Such considerations, we find, are so strong as to override the general practice and create an immediate necessity or present need for construction before the will’s probate. "Present need” has always been the underlying rationale, in decisional law and statute, for construction. (See, for instance, Matter of McLaughlin, 62 Misc 2d 124 [Sur Ct, Nassau County 1970]; Matter of Farquharson, 16 Misc 2d 674 [Sur Ct, Richmond County 1959].) Davis (supra) and its progeny, however, have had the effect of situating this necessity, in a probate proceeding, by definition, after probate. We note that several courts that have departed from the general practice have found such immediate necessity before probate; indeed, have found a need to construe documents that were either never admitted to, or even offered for, probate. In one instance, the impetus was the determination of estate taxes owing, and in the other, the determination of the testamentary nature of the proffered instrument itself. (Matter of Watts, 71 Misc 2d 621 [Sur Ct, Hamilton County 1972]; Matter of Rothwachs, 57 Misc 2d 152 [Sur Ct, Kings County 1968].) This court believes that the almost unique facts and circumstances of the instant case give rise to such a present need. We will therefore construe article fourth of the testatrix’s September 11 will before we make any determination about its probate.
It is well established that in a construction proceeding a court must ascertain the intent of the testator and that it must glean such intent "not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 NY2d 236, 240 [1957].) We find that the will of E. Louise Grupp reflects a clear intent to benefit various charitable organizations important to the decedent and her late husband, as well as numerous relatives and friends. The charitable beneficence is preeminent, not only in the substantial gifts under article second, but especially in the establishment of a charitable trust of the entire residuary estate to be administered under the auspices of the Buffalo Foundation as a lasting memorial to the testatrix and her late husband.
This court recognizes that the intention to benefit charities *415 is a consistent and prominent feature in the decedent’s estate plan, as indicated by a comparison of her prior will dated July 9, 1992 and filed with the court, and the September 11, 1992 will offered for probate. The residuary clause, containing the charitable trust, is carried over almost unchanged from the July will to the September will. Indeed, by affidavit filed in this proceeding, the attorney-draftsman of four previous wills of the testatrix, which span a period of some 22 months from 1990 to 1992, states that in each of the wills he drafted at Mrs. Grupp’s request, the residue was left in a perpetual charitable trust. Part of the thinking behind this bequest, he maintains, was the testatrix’s desire to "minimize, if not completely avoid, any federal estate tax.”
We note that the main changes to the decedent’s testamentary plan, based on a comparison of the July and September wills, involved the preresiduary bequests under articles second and third to charities and individuals. The July will contains no in terrorem clause. The no-contest language appears in the September will as a separate article, directly after the altered preresiduary bequests. We believe that such positioning lends credence to petitioner’s argument that the in terrorem clause is meant to refer to preresiduary beneficiaries.
Most telling to the court, however, is the language of article fourth itself. In keeping with well-settled authority, we must interpret the language of the in terrorem clause strictly. Although New York courts have historically recognized the validity of no-contest provisions (a recognition codified now in EPTL 3-3.5), they have looked with disfavor on their use and in consequence have strictly construed them. (Matter of Alexander, 90 Misc 2d 482, 486 [Sur Ct, NY County 1977], citing Matter of Ball, 57 Misc 2d 683; Matter of Cohn, NYLJ, Nov. 23, 1965, at 16, col 3, affd 26 AD2d 617; see also, Matter of Wall, 76 Misc 106 [Sur Ct, Kings County 1912].) In the will before us, use of the all-encompassing "any beneficiary” would at first seem to extend the risk of forfeiture to all those receiving benefits. But we find that the subsequent disposition of an unsuccessful contestant’s share, "in the same manner provided herein as if such contesting beneficiary had predeceased me”, by making use of the terminology of death, necessarily refers to the expiration of a human being, not the cessation of corporate existence. The language of article fourth, therefore, does not encompass charitable beneficiaries such as petitioner.
We point out that had the testatrix intended the no-contest *416 provision to extend to such beneficiaries, she could have added specific language, such as the following, to the end of article fourth: "or, in the case of a charitable beneficiary, as if such charitable institution had ceased to exist or ceased to qualify as an organization described in sections 170 (c) and 2055 of the Internal Revenue Code of 1986, as amended.” Such language would then tie in with the provision at the end of paragraph J of article fifth (which tracks the wording of the July 9 will) for the distribution by the trustee of the percentage of income of the trust passing to a named charity which fails to qualify under the IRS Code. That the testatrix did not specifically relate the no-contest provision to nonhuman beneficiaries evidences an intention that it not apply to such entities.
We observe that most of the preresiduary gifts to friends and relatives under articles second and third contain gifts over to spouses or descendants in the event these beneficiaries predecease the testatrix. These provisions would therefore also dispose of the shares of unsuccessful individual contestants. There are no such provisions for the distribution of shares of potential charitable residuary contestants (lapsed shares of preresiduary charities would drop into the residue). This court is particularly troubled by the fact that, if indeed, as respondents argue, Mrs. Grupp wished to include the residuary charities in the forfeiture provisions, she left the ultimate distribution of the shares of unsuccessful charitable contestants wholly in doubt. Without language such as we have quoted above specifically relating article fourth to the last sentence of article fifth (concerning the share of a nonqualifying charity), it requires too great an assumption to find in that last sentence the disposition of a share or shares in the event of an unsuccessful challenge. And, Mrs. Grupp cannot have intended to leave open the possibility that the entire residue could pass by intestacy if the Foundation unsuccessfully contested, especially in light of the desire, consistently articulated in this and in prior wills, to create a lasting charitable memorial to herself and her late husband. We cannot believe that she would even have anticipated a contest by a residuary charity.
Just as troubling to this court are related crucial questions raised by article fourth. If the Foundation alone contests, does the Foundation only suffer, or do the Foundation and all the enumerated charitable income beneficiaries of the trust lose their bequests? If only one enumerated charity contests, does it only, or all of the others, including the Foundation, *417 forfeit? This court is cognizant of the fact that this will was drafted by an attorney experienced in estates practice, who could be expected to anticipate and make provision for such contingencies. Wills prepared by experienced attorney-drafts-persons must be more strictly construed than instruments created by laypersons. (Matter of Smith, 14 Misc 2d 205 [Sur Ct, Nassau County 1958].) As the Jefferson County Surrogate’s Court noted, "In examining that language we must take into [account] the fact that it was drawn by an experienced lawyer and must give to the words used their usual and accepted meanings without enlargement and without restriction.” (Matter of Barrett, 141 Misc 637, 638-639 [Sur Ct, Jefferson County 1931], citing Overheiser v Lackey, 207 NY 229, 233, and Adams v Massey, 184 NY 62, 70.) We therefore do not interpret the absence of specificity and the failure to provide for the ultimate distribution of shares forfeited by charitable objectants as mere inadvertence, but rather deliberate reflections of the testatrix’s desire that the no-contest clause have no applicability to the charitable residuary.
This court finds that, taken together, the language of the in terrorem clause itself, with its lack of specific reference to charitable entities, the first appearance of the clause in the September 11 will, positioned just after the preresiduary gifts, to which substantial changes had been made, and the over-all estate plan, consistently articulated in this and prior wills, clearly indicate that the testatrix did not intend article fourth to apply to the charitable residuary.
Accordingly, the in terrorem provision of article fourth of the will of E. Louise Grupp, dated September 11, 1992, is hereby construed as inapplicable to the charitable residuary beneficiaries under article fifth.