| |
|---|
| **Matter of Kay** |
| 2024 NY Slip Op 33505(U) |
| October 3, 2024 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2010-2056/D |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------------x
In the Matter of the Application of Richard L. Kay,
as Trustee of the Himan Brown Revocable Trust dated
November 21, 2005, as Amended December 1, 2006,
Created by


New York County Surrogate's Court
DATA ENTRY DEPT.
OCT 03 2024

DECISION and ORDER
File No.: 2010-2056/D

        HIMAN BROWN,
                Grantor,

for a Determination that an In Terrorem Clause Has Been
Violated by Melina Brown and Barrie Brown, a/k/a Barrie
Sansted.
-------------------------------------------------------------------------------x

M E L L A, S.:

The following submissions were considered in deciding the motion described below.

| Documents Considered | Numbered |
| --- | --- |
| Notice of Motion to Dismiss, Affirmation of Judith M. Wallace, Esq., with Exhibits, Memorandum of Law, Affidavit of Melina Brown, with Exhibit, and Affidavit of Kenneth Shapiro, with Exhibits | 1-5 |
| Memorandum of Law in Opposition, with Exhibits, and Affidavit of Gary B. Freidman, Esq., in Opposition to Motion | 6-7 |
| Reply Memorandum of Law | 8 |

In this proceeding by Richard L. Kay (Petitioner), as Trustee of the Himan Brown

Revocable Trust (Revocable Trust), for a determination that Respondents Melina Brown

(Melina) and Barrie Brown (Barrie) violated the in terrorem clause in the Revocable Trust,

Respondents move to dismiss the petition pursuant to CPLR 3211(a)(1), (7), and (11).

*Background*

Himan Brown (Himan), the creator of radio programs such as "Dick Tracy," established

the Revocable Trust on November 20, 2002. The Revocable Trust named Himan as trustee,

[* 1]

Petitioner (who was Himan's longtime lawyer) as one of two successor co-trustees, and Radio Drama Network (RDN), a charitable foundation established in 1984 to create, produce, market, and distribute radio dramas, as the remainder beneficiary of most of the Revocable Trust's assets.

Over the course of several years, Himan transferred approximately $100 million (which constituted the bulk of his assets) to the Revocable Trust. The Revocable Trust was amended by restatements dated July 8, 2003, October 20, 2004, and November 21, 2005, and a first amendment to the November 21, 2005 restatement, dated December 1, 2006. As pertinent here, these amendments included three changes that inured to Petitioner's benefit: 1) Petitioner's commissions were set at the higher statutory rate for executors (*see* SCPA 2307), 2) Petitioner would become the sole successor trustee upon Himan's death, and 3) the Himan Brown Charitable Trust (Charitable Trust), which was a new trust to be established upon Himan's death, replaced RDN as the remainder beneficiary, giving Petitioner (as the sole trustee of the Charitable Trust as well) the power to allocate trust assets to charities of Petitioner's choice. The Revocable Trust and each amendment thereto included the in terrorem clause at issue in this proceeding.

Himan died testate on June 4, 2010, at age 99. Following an unsuccessful will contest by his son Barry, a will, dated October 20, 2004, was admitted to probate by decree of this court dated February 23, 2015. RDN was the sole beneficiary under the will. Letters testamentary issued to Petitioner as the nominated executor.

Respondents Melina and Barrie are Himan's granddaughters, the children of Barry. Melina and Barrie are directors of RDN, and are also RDN's President and Vice President, respectively.

2

[* 2]

During an RDN board meeting on November 20, 2015, RDN resolved to investigate whether proceedings should be commenced against Petitioner, who was also an RDN board member. In December 2015, RDN filed a petition (the 2015 Petition) in this court, which Melina signed in her capacity as a director of RDN and its president. RDN seeks, among other things: 1) the invalidation of the Revocable Trust provisions establishing the Charitable Trust and providing for Petitioner to receive commissions at the executor rate, 2) the imposition of a constructive trust on the assets of the Charitable Trust for the benefit of RDN, and 3) the reinstallation of RDN as the remainder beneficiary of the Revocable Trust. It is RDN's position that the transfer of substantially all of Himan's assets to the Revocable Trust rendered his bequest to RDN in his October 2004 will meaningless. RDN states that the Revocable Trust and amendments thereto were drafted by Petitioner (who does not dispute this claim on this motion). It further alleges that the purpose of the changes was to effectuate Petitioner's scheme to gain control over Himan's assets.

By Decision and Order dated July 15, 2019, this court found that RDN's 2015 Petition stated timely, valid claims against Petitioner sounding in fraud and undue influence in connection with the Revocable Trust amendments (*see Matter of Brown*, NYLJ, July 23, 2019, at 22, col 3 [Sur Ct, NY County]). The First Department affirmed those determinations, but noted that "[t]o the extent these claims seek compensatory and punitive damages . . . they are dismissed" (*Matter of Radio Drama Network, Inc.*, 187 AD3d 526, 527 [1st Dept 2020]).

On August 28, 2019, Petitioner commenced the underlying proceeding by filing a petition (the 2019 Petition) asking the court to construe the in terrorem clause contained in Article TENTH of the Revocable Trust as requiring forfeiture of all bequests that Respondents received under the Revocable Trust (specifically, $3 million each, as well as real property in Melina's

3

case) as a result of their actions in authorizing and filing the 2015 Petition and prosecuting that proceeding. The in terrorem clause states in relevant part:

> If any beneficiary under the Grantor's Will or this trust shall, in any manner, directly or indirectly, contest or attempt to contest the Grantor's Will, any Codicil thereto, this trust or any provision thereof, or oppose the probate or validity of the Grantor's Will, any Codicil thereto or this trust, in any court or commence or prosecute any legal proceeding of any kind in any court to set aside the Grantor's Will, any Codicil thereto or this trust, or if any beneficiary under the Grantor's Will or this trust commences any claim or action against the Grantor's estate or this trust in any manner, directly or indirectly . . . then and in that event such beneficiary shall forfeit and cease to have any right or interest whatsoever under the Grantor's Will, under any Codicil thereto or under any trust created by the Grantor, including all trusts created hereunder, or in any portion of the Grantor's estate for his or her benefit, as the case may be, and, in such event, the Grantor hereby directs that his property and estate and all trust property shall be disposed of and such trust shall be administered in all respects as if such beneficiary had predeceased the Grantor (2019 Petition at ¶9, *quoting* Ex. E to 2019 Petition at 15-16).

The instant motion to dismiss followed.

*Discussion*

Respondents contend that the 2019 Petition must be dismissed because it fails to state a claim (*see* CPLR 3211[a][7]). Where a movant seeks dismissal under CPLR 3211(a)(7), "the movant has the burden to demonstrate that, based upon the four corners of the [petition] liberally construed in favor of the [petitioner], the pleading states no legally cognizable cause of action" (*Dash v Davis & Gilbert LLP*, 40 Misc 3d 1237[A], 2013 NY Slip Op 51469[U] [Sup Ct, NY County 2013]; *see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

Respondents assert that in terrorem clauses must be strictly construed, that nothing in the relevant clause expressly prohibits them from asserting claims on behalf of RDN, that at all relevant times Respondents were acting on behalf of RDN, that Himan never intended for the in terrorem clause to be triggered under these circumstances, and that a contrary ruling would be violative of public policy. In opposition, Petitioner insists that the in terrorem clause applies to

4

"'any legal proceeding of any kind in any court to set aside [the Revocable Trust],'" and that such broad language reflects Himan's intent to prevent any court proceeding by Respondents "through whatever entity or vehicle" (Mem. in Opp. at 4 [emphasis in original]). He argues that by resolving to file the 2015 Petition, filing the 2015 Petition, and prosecuting the proceeding on behalf of RDN, Respondents used RDN as a vehicle to indirectly challenge the Revocable Trust and have therefore forfeited their legacies, consistent with Himan's intent.

In terrorem clauses are not favored by New York courts and must be strictly construed (*see Matter of Singer*, 13 NY3d 447, 451 [2009]; *Dybalski v Cortright Family Irrevocable Trust Dated July 12, 2007*, 210 AD3d 1415 [4th Dept 2022]; *Matter of Reynolds*, NYLJ, Nov. 26, 2012, at 19, col 3 [Sur Ct, Suffolk County]; *Matter of Egerer*, 30 Misc 3d 1229[A], 2006 NY Slip Op 52713[U] [Sur Ct, Suffolk County 2006]; *Matter of Grupp*, 160 Misc 2d 407, 412 [Sur Ct, Erie County 1994]; *Matter of Robbins*, 144 Misc 2d 510, 514 [Sur Ct, NY County 1989]; *Matter of Alexander*, 90 Misc 2d 482, 486 [Sur Ct, NY County 1977], *affd* 63 AD2d 612 [1st Dept 1978]). It is against this backdrop that the court considers the question presently before it, namely, whether the 2019 Petition states a claim that Melina and Barrie triggered the provisions of the in terrorem clause.

In particular, the court must determine whether the allegation that Respondents indirectly contested the Revocable Trust while acting in their capacities as officers and directors of RDN provides a legal basis for granting the relief sought by Petitioner. For the reasons stated below, the court concludes that under no reasonable reading of the 2019 Petition and the in terrorem clause would Respondents' actions as officers and directors of RDN trigger the provisions of the in terrorem clause, and therefore answers this question in the negative (*see Matter of Reynolds*, NYLJ, Nov. 26, 2012, at 19, col 3 [Sur Ct, Suffolk County] [concluding that "petitioner has

5

failed to state a cause of action upon which relief may be granted, there being no cognizable legal theory under which the actions complained of may be construed as violating the in terrorem clause under captioned decedent's will"]).

First, accepting as true, as the court must, Petitioner's allegations that Respondents were involved in 1) RDN's decision to challenge certain provisions of the Revocable Trust that disadvantaged RDN, 2) the filing of the 2015 Petition, and 3) the prosecution of the proceeding on behalf of RDN, Respondents were not acting as individuals; for legal purposes, they were the corporate entity acting only on its behalf (*cf. Salzman Sign Co. v Beck*, 10 NY2d 63, 67 [1961] [explaining that in the business context, generally "an individual stockholder or officer is not liable for his corporation's engagements" unless the officer has "sign[ed] twice – once as an officer and again as an individual"]). Indeed, by Petitioner's own admission, Respondents "acted on behalf of RDN" and "Melina signed the [2015] Petition as a Director and the President of RDN" (2019 Petition at ¶¶14, 17).

Second, by asserting positions on behalf of RDN–which they were obligated to do as fiduciaries–Respondents did not "indirectly" contest the Revocable Trust. The New York cases cited by Petitioner that involve alleged indirect challenges to wills or trusts are not to the contrary. In those matters, the courts held that the in terrorem clauses were triggered (or potentially triggered) because either: a) a legatee acted in concert with another person who actually brought the challenge but who was only the "nominal party contestant" (*see Matter of Pasternack*, 52 Misc 2d 413, 415-416 [Sur Ct, NY County 1966]; *Matter of Stewart*, 5 NYS 32 [Sur Ct, NY County 1889]); or b) even though a legatee did not contest the will, he or she challenged a disposition under the will by asserting rights concerning assets that the testator had bequeathed to others (*see Matter of Kalikow*, 23 Misc 3d 1107[A] [Sur Ct, Nassau County

6

2009]). In both circumstances, the parties alleged to have violated the in terrorem clause stood to benefit personally from a challenge. That is not the case here, as it is RDN, not Respondents, who would reap the benefits of a successful challenge. Petitioner does not allege otherwise.

Although no New York court has expressly held that will or trust contests by representatives—acting in their fiduciary capacities—who are also beneficiaries do not constitute indirect attacks resulting in forfeiture of their own gifts under challenged instruments, other jurisdictions have reached this conclusion. In *Oglesby v Springfield Marine Bank* (25 Ill 2d 280, 283 [Ill 1962]), the in terrorem clause at issue stated in relevant part that forfeiture would result if "any of [decedent's] heirs, devisees, or if any of the beneficiaries named in [decedent's] Last Will and Testament at any time or in any manner, either directly or indirectly, in any court or by any proceeding, commence, begin, institute, carry on, aid or assist in any contest or proceeding charging the invalidity of this Will or any clause, portion or provisions thereof." The Supreme Court of Illinois held that a determination of whether the clause was triggered by a beneficiary's participation in prior litigation concerning decedent's estate required consideration of the "peculiar position" of the beneficiary in the prior litigation (*see id.* at 288).

Of particular interest to the *Oglesby* court was the fact that the beneficiary asserted her legal positions in her representative capacity as a trustee under her brother's trust. The court reasoned that "in her capacity as trustee, she was under an obligation to take the position and make the contentions she did in the earlier suit" (*id.* at 288). It concluded that the beneficiary's actions in connection with the prior litigation did not result in forfeiture, and stated that a contrary ruling would be "manifestly unconscionable" (*id.* at 289; *see also Shelley v Creighton*, 140 NJ Eq 603, 610 [NJ Ch 1947] [stating that "[t]he law will not impose upon a fiduciary acting

7

in the proper discharge of his duty a penalty affecting his individual interest in the subject-matter"]).

Consistent with this outcome is the Restatement (Third) of Property: Wills and Other Donative Transfers, which states that "[w]here a person in a representative capacity institutes a proceeding contesting the donative document or any of its provisions, the failure of that contest or challenge should have no effect on his or her own gift, unless the representative status is being used as a means of presenting personal views" (Restatement [Third] of Property: Wills and Other Donative Transfers § 8.5, Comment *f* [2003]). Here, regardless of the outcome of the 2015 Petition, Respondents will gain nothing from RDN's challenge to the Revocable Trust amendments at issue. As a result, Respondents' personal views could not have driven their actions in connection with the 2015 Petition.

Third, a finding that Respondents have not triggered the in terrorem clause by challenging the Revocable Trust amendments on behalf of RDN is also entirely consistent with Petitioner's allegations as to Himan's intent. Petitioner alleges in the 2019 Petition that Himan included the in terrorem clause in "each and every Revocable Trust instrument" because Himan knew from personal experience that his estranged son Barry was litigious, and because he "wanted to ensure that Barry could not directly or indirectly through Barry's daughters, Melina and Barrie, come anywhere near obtaining the bulk of Himan's estate" (2019 Petition at ¶¶8-9). Here, RDN is the real party in interest (*cf. Matter of Pasternack*, 52 Misc 2d at 415-416). As previously noted, if RDN ultimately prevails with respect to the 2015 Petition, it is RDN, a not-for-profit corporation, that will reap any financial benefits, not Respondents in their individual capacities. There is thus no danger that the scenario allegedly of concern to Himan will come to pass.

8

In any event, had it in fact been Himan's intent to penalize Respondents for acting on RDN's behalf, "there would be considerable question as to whether a court of equity should enforce the forfeiture" (*Oglesby v Springfield Marine Bank*, 25 Ill 2d at 289). Beneficiaries who also act in representative roles should not be forced to choose between fulfilling their fiduciary duties and forfeiting their bequests.

In sum, there is no basis, in law or logic, to impose a forfeiture on those who challenge an instrument in a representative capacity and do not benefit personally from their actions. Accordingly, the court concludes that by asserting positions on behalf of RDN in their fiduciary capacities, Respondents did not "indirectly" contest the Revocable Trust. In light of the court's determination that the in terrorem clause, which Petitioner quoted in its entirety in his 2019 Petition, does not apply under these circumstances, Respondents are entitled to dismissal of the 2019 Petition under CPLR 3211(a)(7). Petitioner has failed to state a claim based on the four corners on his pleadings.

In light of this determination, the court need not consider Respondents' contention that dismissal of the 2019 Petition is also warranted under CPLR 3211(a)(1) and, in Barrie's case, under CPLR 3211(a)(11).

For the foregoing reasons, Respondents' motion to dismiss the 2019 Petition is granted. Their request for costs and disbursements, however, is denied.

This decision constitutes the order of the court. Clerk to notify.

Dated:  October 3, 2024

_____
SURROGATE

9